**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NICHOLAS MARTIN on behalf of himself and others similarly situated, | ) | 1:12-cv-215 |
| Plaintiff, | ) | |
| | ) | Magistrate Judge Denlow |
| v. | ) | (by consent) |
| | ) | |
| DUN & BRADSTREET, INC., and CONVERGYS CUSTOMER MANAGEMENT GROUP, INC. | ) | JURY DEMANDED |
| | ) | |
| | ) | |
| Defendants. | | |

# Exhibits to Planitiff's Motion for Clarification

# Exhibit A

Order Certifying Class

**Alexander Burke**

| | |
|---|---|
| **From:** | usdc_ecf_ilnd@ilnd.uscourts.gov |
| **Sent:** | Tuesday, August 21, 2012 2:33 PM |
| **To:** | ecfmail_ilnd@ilnd.uscourts.gov |
| **Subject:** | Activity in Case 1:12-cv-00215 Martin v. Dun & Bradstreet, Inc. et al order on motion to certify class |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**United States District Court**

**Northern District of Illinois - CM/ECF LIVE, Ver 5.0.3**

**Notice of Electronic Filing**

The following transaction was entered on 8/21/2012 at 2:33 PM CDT and filed on 8/21/2012

**Case Name:** Martin v. Dun & Bradstreet, Inc. et al
**Case Number:** 1:12-cv-00215
**Filer:**
**Document Number:** 37

**Docket Text:**
**MINUTE entry before Honorable Morton Denlow:Status hearing held on 8/21/2012 and continued to 12/6/2012 at 10:00 a.m. For the reasons stated in open court, Plaintiff's motion for Class Certification [4] is granted without prejudice subject to the Defendants seeking to decertify the class on or before 12/19/2012. The class is hereby defined as all persons nationwide who defendant or some person on its behalf called on their cell phone using a device that has the capacity to dial numbers without human intervention, where defendant obtained the phone number from some source other than directly from the called party, where any call was made between and including a date two years prior to the filing of this action, ongoing.Mailed notice(ldg, )**

**1:12-cv-00215 Notice has been electronically mailed to:**

Isaac J. Colunga      debra.dipisa@icemiller.com, isaac.colunga@icemiller.com

Joshua Briones      joshua.briones@dlapiper.com

Perrie M. Weiner      perrie.weiner@dlapiper.com

Bart Thomas Murphy    bart.murphy@icemiller.com, jane.boyd@icemiller.com

Thomas J Hayes    thomas.hayes@icemiller.com, jan.kruse@icemiller.com

Albert Edward Hartmann    docketingchicago@dlapiper.com, albert.hartmann@dlapiper.com

Alexander Holmes Burke    alburke@gmail.com, aburke@burkelawllc.com

**1:12-cv-00215 Notice has been delivered by other means to:**

# Exhibit B

Transcript of Class Certification Ruling

 1   TRANSCRIBED FROM DIGITAL RECORDING

 2                 IN THE UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
 3                        EASTERN DIVISION

 4   NICHOLAS MARTIN, on behalf of    )  Docket No. 12 C 215
     himself and others similarly     )
 5   situated,                        )
                                      )
 6                      Plaintiff,    )
                                      )
 7           v.                       )  Chicago, Illinois
                                      )  August 21, 2012
 8   DUN & BRADSTREET, INC., and      )  10:13 o'clock a.m.
     CONVERGYS CUSTOMER MANAGEMENT    )
 9   GROUP, INC.,                     )
                                      )
10                      Defendants.   )

11              TRANSCRIPT OF PROCEEDINGS - STATUS
                BEFORE THE HONORABLE MORTON DENLOW
12
     APPEARANCES:
13
     For the Plaintiff:            BURKE LAW OFFICES, LLC., by
14                                 MR. ALEXANDER HOLMES BURKE
                                   155 North Michigan Avenue
15                                 Suite 9020
                                   Chicago, Illinois 60601
16
     For Defendant Dun &:          ICE MILLER LLP, by
17   Bradstreet:                   MR. ISAAC J. COLUNGA
                                   2300 Cabot Drive
18                                 Suite 455
                                   Lisle, Illinois 60532
19

20                    ALEXANDRA ROTH, CSR, RPR
                       Official Court Reporter
21                    219 South Dearborn Street
                           Room 1224
22                    Chicago, Illinois 60604
                          (312) 408-5038
23

24   NOTE:  Please notify of correct speaker identification.
     FAILURE TO SPEAK DIRECTLY INTO THE MICROPHONE MAKES
25   PORTIONS INAUDIBLE.

2

```
 1    APPEARANCES:   (Continued)

 2    For Defendant Convergys:        DLA PIPER US LLP IL, by
                                      MR. ALBERT EDWARD HARTMANN
 3                                    203 North LaSalle Street
                                      20th Floor
 4                                    Chicago, Illinois 60601

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1      (Proceedings had in open court:)

2              THE CLERK:  12 C 215, Martin versus Dun & Bradstreet.

3              MR. BURKE:  Good morning, Judge.  Alexander Burke for

4      the plaintiff.  B-u-r-k-e.

5              MR. COLUNGA:  Good morning, your Honor.  Isaac

6      Colunga, C-o-l-u-n-g-a, for the defendant Dun & Bradstreet.

7              MR. HARTMANN:  Good morning, your Honor.  Albert

8      Hartmann, H-a-r-t-m-a-n-n, for defendant Convergys.

9              MR. BURKE:  Judge, we are here this morning on status.

10     The last time we were in, your Honor entered an order

11     compelling Dun & Bradstreet to respond to my discovery.  And I

12     received -- well, the discussions leading up to that order were

13     that Dun & Bradstreet received an enormous amount of data and

14     that they were culling through the data trying to figure out

15     for which calls they had consent.

16             I didn't receive any of that information in response

17     to the motion to compel.  I received 500 pages of contracts and

18     insurance policies and non-responses in the form of

19     interrogatory responses.

20             They didn't tell me the information having to do with

21     my client.  They did produce maybe five pages having to do with

22     my client.  They didn't produce any materials about the TCPA,

23     you know, compliant materials, no dialer materials.  They

24     denied that they used a dialer, even though they previously

25     told me that they -- they had used a dialer.

1          I view this as total non-compliance.

2          THE COURT:  Who wants to respond?

3          MR. COLUNGA:  I'd like to respond, Judge.

4          First of all, your Honor, Dun & Bradstreet never

5     explained to the plaintiff that they used a dialer.  The way

6     this relationship worked is, we worked with Convergys, who had

7     the dialers that placed the phone calls.  Dun & Bradstreet

8     doesn't have dialers.

9          Plaintiff is correct that we did receive a large

10    amount of data that we were working through.  And we were in

11    fact looking for consent.  Again, plaintiff is right about

12    that.

13         I think what plaintiff is having a problem is -- is

14    with the first interrogatory that he asked for.  And -- and

15    unfortunately the plaintiff is a victim of his own drafting.

16    What -- what he's asked for is identify -- for us to identify

17    all automated calls for each of the phone numbers in the class

18    that the plaintiff has described below.

19         In this class, it does require us to determine whether

20    the phone numbers that we have -- if they were provided to us

21    consensually.  And so we did spend a lot of time looking to

22    determine whether there was consent to these phone calls.

23    Unfortunately, what we determined is that there is no automated

24    way for us to do that.

25         Just to tell you a little bit about some parts of Dun

5

1    & Bradstreet, we have call records.  And we have a database

2    that contains information about companies, is how it works.

3    People subscribe to our service.  And you can find out a number

4    of different facts about companies and corporations if you ask

5    us for our information.

6         When we update those records, we enter a note that

7    states whether or where that update came from, the source of

8    that particular update, in some instances.  When that record is

9    updated again, that item is deleted, and it's replaced with the

10   new item that has the update -- the note as to the updated

11   information.

12        After we determine that and after looking back through

13   this, it -- it was clear that we didn't have an automated --

14   automated way of tracking back each phone number to determine

15   the source, to comply with the plaintiff's class definition.

16   And that's why we didn't produce the -- the list that plaintiff

17   was expecting to receive.

18        MR. BURKE:  Judge, in reply, I -- I would say that

19   first they haven't produced a single call record for anybody,

20   including the plaintiff.  They haven't admitted, I don't think,

21   that they even called the plaintiff.

22        Second of all, we issued these requests on February 7.

23        THE COURT:  I mean, there has been a motion for class

24   certification pending since January 11, since January 11.

25   You've been here a number of times.  And, you know, I -- I

1   don't see much has happened in terms of responding to the

2   discovery.

3           So what I'm inclined to do is to certify the class and

4   then let you figure out a way to decertify it.

5           MR. HARTMANN:  Your Honor, on behalf of defendant

6   Convergys, if I can clarify one thing.  Convergys was making

7   these calls.  We have produced a record of the call to

8   plaintiff in this instance.  So -- and I think one other thing

9   that Mr. Colunga mentioned, when he sent the discovery request

10  to Mr. Burke and that we -- we definitely second sitting down

11  to try to talk settlement because setting aside the class

12  definition which focuses on where defendant obtained the phone

13  number, the source of the number, it may be other ways to look

14  at this where we can come to some sort of classwide resolution.

15          MR. BURKE:  Judge, I think certifying a class and

16  letting them try to prove consent for blocks of consumers is

17  appropriate in this case.  I mean, there is no -- there is no

18  dispute that all the people were called using the same

19  mechanisms.  And there is an order compelling -- and this was

20  a -- weeks and weeks ago.  They had a long time to respond.

21          THE COURT:  It's -- it's months and months ago, months

22  and months.

23          MR. COLUNGA:  And, your Honor, the motion to certify

24  was filed with the complaint in order to stave off a pickoff

25  settlement offer to the named plaintiff.  It's a guidepost.  It

7

1    doesn't contain any substance.

2           THE COURT:  Well --

3           MR. COLUNGA:  It's --

4           THE COURT:  Well, in terms of discovery, I tried to

5    give the defendants an opportunity to provide Mr. Burke with

6    the necessary information so that you can determine or he can

7    determine whether or not there is going to be a class or there

8    is not going to be a class.  Nothing has been brought forward

9    to lead me to believe that it's not an appropriate class

10   action.

11          Certifying a class and then letting you if later you

12   want to seek to decertify seems to be the only way to get your

13   attention on this to move the case forward.

14          MR. COLUNGA:  Your Honor, what -- what we might be

15   able to do is come up with a list that may not be responsive to

16   the discovery, but at least it would allow us to start with

17   numbers and start talking settlement, which I think we all want

18   to -- to do here.

19          THE COURT:  Okay.

20          MR. BURKE:  Judge, there is an order --

21          MR. COLUNGA:  It is possible.

22          MR. BURKE:  There is an order telling them to give me

23   all their evidence of the consent, and they did.

24          THE COURT:  Do you want to change the class definition

25   in any way from what you have in your motion for class

8

1    certification?

2              MR. BURKE:  Not that I know of, Judge.

3              THE COURT:  Okay.  I'm going to grant plaintiff's

4    motion for class certification subject to the defendants' right

5    to seek decertification within 120 days.  Okay?  So that way

6    your -- the ball is now in your court to come forward with the

7    information.  I can't figure out any other way to get you to

8    come forward with it.  Okay?

9              So it's without prejudice to your right to seek

10   decertification if you find some basis for seeking it to be

11   decertified.  It's my understanding that there is no dispute

12   that the phone calls were all made in the same mechanism,

13   right?

14             MR. BURKE:  That's right, Judge.

15             THE COURT:  Same -- the same way.  So unless somebody

16   can show that there was consent, why shouldn't the class be

17   certified?

18             MR. BURKE:  And, Judge, after those 20 -- 120 days,

19   would the defendant then be barred from introducing evidence of

20   consent?

21             THE COURT:  Well, that's going to be left up to my --

22   that's going to be left up to my successor.  But I'm just

23   trying to move this case along.  Okay?

24             MR. BURKE:  Thank you.

25             THE COURT:  And -- and what I'll do is, I will give

1    you -- I will set a status.  This is August.  I'll set a status

2    in December.

3              THE CLERK:  120 days is December 19.

4              THE COURT:  Well, I want to bring them in before --

5    before that, so they have an opportunity to talk to my

6    successor about, you know, where -- where things stand.  So

7    let's make it early December because I want to be sure that

8    everybody has the opportunity to talk and sort through all

9    this.

10             THE CLERK:  December 6, 10:00 a.m.

11             MR. HARTMANN:  Your Honor, just for the record, may I

12   note that the motion to compel discovery was directed only

13   against defendant Dun & Bradstreet, not defendant Convergys,

14   and that we weren't given an opportunity to brief the motion

15   for class certification on some of the other elements the

16   plaintiff is required to prove.

17             THE COURT:  And that's why this is without prejudice.

18   So, you know, you are not in any way -- you are not in any way

19   prevented -- I want to make this clear -- from raising any of

20   those other objections or anything else you want to raise.  But

21   I need the defendants to begin taking action.  And if one of

22   the defenses you have is, we have these consents, then I expect

23   that Mr. Burke is going to see that.

24             If one of your other defenses is something else -- I

25   mean, obviously my preference is always to have the plaintiff

10

1  go forward and -- and do it.  But I just -- I just feel like

2  Mr. Burke has been facing a stone wall here.

3         So -- so that's going to be my order.

4         MR. BURKE:  Thank you, Judge.

5         THE COURT:  Very good.  Take care.

6         MR. HARTMANN:  Thank you, your Honor.  And good luck

7  with your retirement.

8         THE COURT:  Thank you.  Thank you.

9     (Which were all the proceedings had at the hearing of the

10       within cause on the day and date hereof.)

11                        CERTIFICATE

12         I HEREBY CERTIFY that the foregoing is a true, correct

13  and complete transcript of the proceedings had at the hearing

14  of the aforementioned cause on the day and date hereof.

15

16  /s/Alexandra Roth                          8/27/2012
    _____      _____
17   Official Court Reporter                  Date
     U.S. District Court
18   Northern District of Illinois
     Eastern Division
19

20

21

22

23

24

25

# Exhibit C

Dun & Bradstreet, Inc.
Petition for Leave to Appeal

No. _____

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| NICHOLAS MARTIN, | ) |
| | ) |
|     Plaintiff-Respondent, | )   Petition for Rule 23(f) appeal from the |
| | )   United States District Court for the |
| v. | )   Northern District of Illinois |
| | ) |
| DUN & BRADSTREET, INC. and | )   No. 12 C 215 |
| CONVERGYS CUSTOMER | ) |
| MANAGEMENT GROUP INC., | )   Magistrate Judge Morton Denlow |
| | ) |
|     Defendant-Petitioner. | ) |

## DEFENDANT-PETITIONER DUN & BRADSTREET, INC.'S
## PETITION FOR LEAVE TO APPEAL PURSUANT TO RULE 23(f)

Bart T. Murphy*
Isaac J. Colunga
**ICE MILLER LLP**
2300 Cabot Drive
Suite 455
Lisle, Illinois 60532
Telephone: (630) 955-6392

*Attorneys for Defendant-Petitioner*
*Dun & Bradstreet, Inc.*

*Counsel of Record

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: Currently Unassigned

Short Caption: Nicholas Martin v. Dun & Bradstreet, Inc., et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[  ]      PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Dun & Bradstreet, Inc.

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Ice Miller LLP

(3) If the party or amicus is a corporation:

i) Identify all its parent corporations, if any; and

The Dun & Bradstreet Corporation

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

No publicly-held company owns 10% or more of The Dun & Bradstreet Corporation's stock

---

Attorney's Signature: s/ Bart T. Murphy                                          Date: September 4, 2012

Attorney's Printed Name: Bart T. Murphy

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes  ✕    No _____

Address:   Ice Miller LLP, 2300 Cabot Drive, Suite 455

Lisle, Illinois 60532

Phone Number: (630) 955-6392                        Fax Number: (630) 955-4271

E-Mail Address: isaac.colunga@icemiller.com

rev. 01/08 AK

## CIRCUIT RULE 26.1   DISCLOSURE STATEMENT

Appellate Court No: Currently Unassigned

Short Caption: Nicholas Martin v. Dun & Bradstreet, Inc., et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

### [ ]   PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Dun & Bradstreet, Inc.

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Ice Miller LLP

(3) If the party or amicus is a corporation:

i) Identify all its parent corporations, if any; and

The Dun & Bradstreet Corporation

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

No publicly-held company owns 10% or more of The Dun & Bradstreet Corporation's stock

---

Attorney's Signature: s/ Isaac J. Colunga                 Date: September 4, 2012

Attorney's Printed Name: Isaac J. Colunga

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes _____   No _X_

Address: Ice Miller LLP, 2300 Cabot Drive, Suite 455

Lisle, Illinois 60532

Phone Number: (630) 955-6124          Fax Number: (630) 955-4281

E-Mail Address: isaac.colunga@icemiller.com

rev. 01/08 AK

## TABLE OF CONTENTS

STATEMENT OF JURISDICTION………………………………………….. 1

QUESTION  PRESENTED…………………………………………………… 1

INTRODUCTION…………………………………………………………... 2-3

RELIEF REQUESTED…………………………………………………... 4

STATEMENT OF RELEVANT FACTS………………………………… 4

      Background………………………………………………………… 4-5

      Plaintiff's Motion to Compel………………………………………….. 5-6

      The District Court's Class Certification Order………………………… 6-7

ARGUMENT……………………………………………………………….. 8

I.    An appeal is warranted in this case.  A class may only be
       certified if after rigorous analysis the court is confident that
       the Rule 23(a) prerequisites have been satisfied.  Conformance
       with Rule 23(a) is not an option, and here the district court
       did not consider the Rule 23(a) prerequisites at all………………… 8-9

II.   A district court should not be allowed to use class certification
as a means to wring discovery from a defendant whose position
regarding discovery is justified but unpopular with the Plaintiff.
Class certification is not an appropriate discovery sanction
under any circumstances................................................... 10-11

CONCLUSION............................................................... 12

ATTACHMENTS.............................................................. A1-
11

ii

## POINTS AND AUTHORITIES

### I. Case Law

*Blair v. Equifax Check Servs., Inc., 181 F.3d 832, 834 (7th Cir. 1999)* ....... 10

*CE Design Ltd. v. King Architectural Metals, Inc., 637 F.3d 721, 723 (7th Cir. 2011)* ............................................................. 8

*Davis v. Hutchins, 321 F.3d 641, 649 (7th Cir. 2003)* ....................... 9

*General Tele. Co. of the S.W. v. Falcon, 457 U.S. 147, 160-61 1982)* ....... 8

*Jamie S. v. Milwaukee Pub. Sch., 668 F.3d 481, 493 (7th Cir. 2012)* ........ 8

*Salgado by Salgado v. General Motors Corp., 150 F.3d 735, 742 (7th Cir. 1998)* ............................................................. 10-11

### II. Other Authorities

FED. R. CIV. P. 23(f) advisory committee's note of 1998 ............ 8

## POINTS AND AUTHORITIES

### I. Case Law

*Blair v. Equifax Check Servs., Inc., 181 F.3d 832, 834 (7th Cir. 1999)*.......  10

*CE Design Ltd. v. King Architectural Metals, Inc., 637 F.3d 721, 723 (7th Cir. 2011)*.................................................................  8

*Davis v. Hutchins, 321 F.3d 641, 649 (7th Cir. 2003)*......................  9

*General Tele. Co. of the S.W. v. Falcon, 457 U.S. 147, 160-61 1982)*.......  8

*Jamie S. v. Milwaukee Pub. Sch., 668 F.3d 481, 493 (7th Cir. 2012)*........  8

*Salgado by Salgado v. General Motors Corp., 150 F.3d 735, 742 (7th Cir. 1998)*..............................................................................  10-11

### II. Other Authorities

FED. R. CIV. P. 23(f) advisory committee's note of 1998............  8

Defendant Dun & Bradstreet, Inc. ("Dun & Bradstreet") respectfully petitions, pursuant to Rule 23(f) of the Federal Rules of Civil Procedure, for leave to appeal from the Magistrate Judge's order of August 21, 2012 granting Plaintiff Nicholas Martin's ("Plaintiff") motion for class certification. A copy of the Judge's order and a transcript of the proceedings are attached to this Petition.

## STATEMENT OF JURISDICTION

The District Court had original jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as Plaintiff's claims allegedly arose under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq. The Magistrate Judge entered an order granting Plaintiff's motion for class certification on August 21, 2012. D&B has timely filed this Petition within 14 days of the Judge's order, as required by FED. R. CIV. P. 23(f).

## QUESTION PRESENTED

Whether the district court may use class certification on its own accord as a means to force a party to produce documents (1) where the Plaintiff's motion for class certification was unsubstantiated and filed with its complaint to avoid receiving a settlement offer that would moot Plaintiff's claims, (2) where the district court failed to conduct a "rigorous analysis" of the Rule 23(a) prerequisites, (3) where the defendants did not have an opportunity to raise defenses to the elements of class certification, and (4) where the defendants did not have an opportunity to file briefs in opposition to the motion for class certification.

## INTRODUCTION

The question of whether the district court may use class certification as a means to advance discovery is a question unique to this Circuit and other federal courts. This Court has never addressed this question, and only a few federal courts have commented on the misuse of class certification.

In this case the parties had consented to jurisdiction before the assigned Magistrate Judge. The parties were in the midst of discovery when the Magistrate Judge, *sua sponte*, granted Plaintiff's motion for class certification. It happened during a status hearing. Plaintiff had not filed a notice of presentment with respect to its motion for class certification, nor had Plaintiff requested that the Magistrate Judge address the motion during discovery. The parties had not briefed the motion, and the defendants had not had an opportunity to oppose the motion. In reality, Plaintiff's motion for class certification was a preliminary, unsupported motion that Plaintiff admittedly filed at the same time it filed its complaint in order to avoid a possible settlement offer that would have mooted Plaintiff's claims. The motion was completely unsubstantiated, as a fully-developed record did not exist when Plaintiff filed the motion, nor does one exist now.

Nevertheless, at the status hearing, after allowing Dun & Bradstreet to explain why it could not comply with Plaintiff's discovery requests as they were written, the Magistrate Judge, out of nowhere and on its own accord, granted Plaintiff's motion for class certification. In doing so the court said to the defendants that it could not "figure out any other way to get you to come forward with [the

2

information]" that Plaintiff sought. (Tr. of Proceedings at 8; Attachments at A09 ). The ruling focused not on the elements of Rule 23 class certification, but instead on Dun & Bradstreet's alleged failure to answer Plaintiff's discovery. Dun & Bradstreet complied with discovery, but the Magistrate Judge ignored this fact.

Dun & Bradstreet seeks leave to appeal from this class certification ruling so that this Court may resolve the question of whether a district court or magistrate judge may use class certification as a means to advance litigation or as a discovery sanction, and to reverse what Dun & Bradstreet believes to be an erroneous ruling and a dangerous precedent that the Magistrate Judge set.

## RELIEF REQUESTED

Dun & Bradstreet respectfully requests that this Court grant Dun & Bradstreet leave to appeal so that it can seek to vacate the Magistrate Judge's order granting Plaintiff's motion for class certification and to de-certify the class.

## STATEMENT OF RELEVANT FACTS

**Background**: On January 11, 2012 Plaintiff initiated this case as a class action under the TCPA after Dun & Bradstreet's co-defendant, Convergys Customer Management Group Inc. ("Convergys"), allegedly called Plaintiff on his cell phone using an automatic telephone dialing system. (Dkt. # 1 ¶ 9). On the same day he filed his complaint, Plaintiff filed a motion for class certification, in which he admitted to filing the "motion along with the complaint in order to avoid the plaintiff from being 'picked off' through a Rule 68 or individual settlement offer, as suggested by some court decisions." (Dkt. # 4 ¶ 7). Plaintiff originally sought to present the motion before the District Court on February 2, 2012. (Dkt. # 6).

On January 27, 2012 the parties consented to proceed on all matters before the assigned Magistrate Judge. (Dkt. # 12). In light of the parties' agreement, the district court entered an order that struck the hearing date of Plaintiff's motion for class certification and required the parties to re-notice their motions before the Magistrate Judge when the Clerk's Office docketed the reassignment order. (Dkt. # 15). As it turned out, Plaintiff never re-noticed his motion for class certification. The parties understood that Plaintiff eventually would substantiate the motion at the close of discovery, at which time the parties would have an opportunity to brief

4

the motion. The parties memorialized this understanding in their "Report of Planning Meeting," which stated: "Upon completion of discovery (as discussed above), Plaintiff expects to renew/supplement that motion [for class certification], at which time the parties and the Court will set an appropriate briefing schedule." (Dkt. # 28 at 5).

**Plaintiff's Motion to Compel**: Plaintiff initiated discovery on February 29, 2012, in line with his intention to gather evidence in an attempt to support his motion for class certification. (Dkt. # 33 ¶ 3). Specifically, Plaintiff sought information on "all automated calls for each of the persons in the class described below." (Dkt. # 33, Ex. A at 4). In his class definition, Plaintiff limited the class of persons to those that received calls "where the defendant obtained the phone number from some source other than directly from the called party." (*Id.*, Ex. A at 5). A plain reading of this definition requires the defendants to determine whether they obtained consent for each call that Plaintiff was asking for. (*Id.*).

Both defendants responded to Plaintiff's discovery requests. (*Id.*, Ex. B as to Dun & Bradstreet). And in subsequent discussions between Plaintiff and Dun & Bradstreet, Dun & Bradstreet agreed to provide a supplemental response to Plaintiff's class and consent-related discovery, to the extent it was possible. (Dkt. # 33 ¶ 4). Then, when Dun & Bradstreet could not commit to a date for its supplemental response, Plaintiff filed a motion to compel, through which it "request[ed] that the Court set some reasonable date-certain by which Dun & Bradstreet must produce full documents and interrogatory responses." (*Id.* ¶ 7).

5

On July 9, 2012 the district court granted Plaintiff's motion to compel and ordered Dun & Bradstreet to respond to all outstanding discovery by August 15, 2012 unless Plaintiff and Dun & Bradstreet agreed to another date. (Dkt. # 36). The district court scheduled a status hearing for August 21, 2012. (*Id.*). Dun & Bradstreet complied with the court's order and made a supplemental production of documents and interrogatory responses.

**The District Court's Class Certification Order**: At the status hearing on August 21, 2012 Plaintiff's counsel started off by acknowledging that Dun & Bradstreet produced documents responsive to Plaintiff's document requests. (Tr. of Proceedings at 4; Attachments at A05). Plaintiff's counsel complained, however, that Dun & Bradstreet had not produced "compliant" materials. (*Id.*). In response Dun & Bradstreet's counsel explained that it was unable to produce the list of calls that Plaintiff wanted because Dun & Bradstreet did not have an "automated way of tracking back each phone number to determine the source, to comply with the plaintiff's class definition." (*Id.* at 5; Attachments at A06).

After listening to Dun & Bradstreet's counsel's explanation, the Magistrate Judge commented, first, that the motion for class certification had been pending since January 11, 2012, and second, that "not much has happened in terms of responding to the discovery." (Tr. of Proceedings at 5-6; Attachments at A06-07). Realizing that the Magistrate Judge intended to grant the motion for class certification, the defendants objected. The Magistrate Judge remained unmoved, reasoning that: "Certifying a class and then letting you if later you want to seek to

6

decertify **seems to be the only way to get your attention on this to move the case forward.**" (*Id.* at 7; Attachments at A08) (emphasis supplied). In explaining the ruling to defendants, the Magistrate Judge added: "the ball is now in your court to come forward with the information. I can't figure out any other way to get you to come forward with it." (*Id.* at 8; Attachments at A09). With that, the Magistrate Judge on its own accord certified the class. (*Id.* at 8-9; Attachments at A9-10).

The Magistrate Judge did not mention or discuss the prerequisites of Rule 23.

## ARGUMENT

Rule 23(f) authorizes this Court to adjudicate appeals from class certification decisions prior to entry of final judgment. As explained in the Committee Notes to Rule 23(f), the standards for Rule 23(f) appeals are less "limiting" than the general interlocutory appeal standards in 28 U.S.C. 1292(b), and one of the likely grounds for granting a Rule 23(f) petition is "when the certification decision turns on a novel or unsettled question of law," which we have here. FED. R. CIV. P. 23(f) advisory committee's note of 1998. The decision in this case turns on a completely novel use of class certification for which no authority exists. An appeal pursuant to Rule 23(f) is merited.

**I.  An appeal is warranted in this case. A class may only be certified if after rigorous analysis the court is confident that the Rule 23(a) prerequisites have been satisfied. Conformance with Rule 23(a) is not an option, and here the district court did not consider the Rule 23(a) prerequisites at all.**

The United States Supreme Court has made it clear that a class "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Tele. Co. of the S.W. v. Falcon*, 457 U.S. 147, 160-61 (1982). *See, e.g., Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 493 (7th Cir. 2012); *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 723 (7th Cir. 2011). The Supreme Court has stressed, in fact, that actual conformance with Rule 23(a) is indispensable. *Falcon*, 457 U.S. at 161. "The requirement that the district court conduct this 'rigorous analysis,' among other things, serves the important function of protecting absent class members whose

rights may be affected by the class certification." *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003). Allowing certification by default, or as a means to force a defendant to comply with discovery, "with no independent analysis or determination by the district judge, would remove this important protection." *Id.*

Here, the Magistrate Judge did not analyze the Rule 23 factors prior to granting Plaintiff's motion for class certification. Certifying the class was, in essence, a discovery sanction, though none was merited given that Dun & Bradstreet had complied with the court's prior order. The Magistrate Judge ignored this fact, seeking only to "move this case along." There was no authority for its decision.

Furthermore, it is significant that any discovery violation that may have occurred – though the Magistrate Judge did not find a violation – has absolutely nothing to do with the issues of numerosity, adequacy of the class representatives or adequacy of the plaintiff's counsel. There is no question that granting class certification without considering these and other important factors is improper, as Rule 23 does not condone such a perfunctory determination of class certification, especially where the defendants have had no opportunity to present arguments in opposition. This ruling cannot be taken lightly. It sets a dangerous precedent to grant class certification without any Rule 23 analysis simply to force a defendant's hand in discovery. Dun & Bradstreet must be allowed the opportunity to appeal the decision.

II.  **A district court should not be allowed to use class certification as a means to wring discovery from a defendant whose position regarding discovery is justified but unpopular with the Plaintiff. Class certification is not an appropriate discovery sanction under any circumstances.**

An appeal is also merited because the Magistrate Judge's ruling has put considerable pressure on the defendants to settle, even where discovery is incomplete and the merits of Plaintiff's suit have not been tested. This Court in *Blair v. Equifax Check Servs., Inc.* explained that interlocutory review of orders granting class certification may be appropriate because "just as a denial of class status can doom the plaintiff, so a grant of class status can put considerable pressure on the defendant to settle, even when the plaintiff's probability of success on the merits is slight." 181 F.3d 832, 834 (7th Cir. 1999). This is an important concern. Granting class certification prematurely, based on a limited record and an unsubstantiated motion, may force a defendant to settle a case rather than incur the costs of defending a class action and run the risk of potentially ruinous liability. Here, that's precisely what happened. There is nothing at this point to support Plaintiff's motion for class certification. Discovery is not complete. Yet, because the Magistrate Judge sought to grant class certification as a discovery sanction in order to move this case along, the burden is now on the defendants to either settle the case or attempt to undo the court's ruling.

Moreover, to the extent a discovery sanction is warranted in a case, for whatever reason, class certification would never be a sanction proportional to any discovery violation that may have occurred. *E.g.*, *Salgado by Salgado v. General*

10

*Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998) (explaining that sanctions for discovery must be proportional to the violation). To say otherwise would allow the district court to avoid analyzing the Rule 23 prerequisites, which it is not allowed to do, simply to force a party to comply with discovery. Also, in cases where there are multiple defendants, a class certification sanction punishes all of the defendants, although only one of the defendants arguably may have committed a discovery violation. Finally, turning back to this case, class certification is an overly-severe sanction for a defendant that complied with discovery. Again, Dun & Bradstreet initially answered Plaintiff's discovery requests, and then produced documents to Plaintiff and supplemented its interrogatory responses in line with the district court's order. The Magistrate Judge did not make a finding that Dun & Bradstreet committed a discovery violation. In fact the Magistrate Judge did not even address Dun & Bradstreet's explanation as to why it could not comply with Plaintiff's discovery request as it was drafted. The Magistrate Judge simply granted class certification to "move the case forward," thereby shifting the burden to the defendants to "figure out a way to decertify it." (Tr. of Proceedings at 6, 7; Attachments at A07, 08).

This is a novel use of class certification for which no authority exists. Dun & Bradstreet should be allowed to appeal the decision so that this Court may have an opportunity to answer the question presented and reverse the court's decision.

## CONCLUSION

For the reasons stated above, Petitioner's Rule 23(f) Petition should be granted and a briefing schedule established to address the merits of the district court's class certification ruling.

Respectfully submitted,

DUN & BRADSTREET, INC.

By: /s/ Bart T. Murphy
One of Its Attorneys

Bart T. Murphy
Isaac J. Colunga
**ICE MILLER LLP**
2300 Cabot Drive
Suite 455
Lisle, Illinois 60532
Telephone: (630) 955-6392

*Attorneys for Defendant-Petitioner*
*Dun & Bradstreet, Inc.*

# Exhibit D

Convergys Customer Management Group, Inc.
Petition for Leave to Appeal

No. _____

# In the
# United States Court of Appeals
# for the Seventh Circuit

---

**NICHOLAS MARTIN, Individually And On Behalf Of All Others Similarly Situated,** *Plaintiff,*

**v.**

**DUN AND BRADSTREET, INC., and CONVERGYS CUSTOMER MANAGEMENT GROUP INC.,** *Defendants.*

**APPEAL OF CONVERGYS CUSTOMER MANAGEMENT GROUP INC.**

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:12-cv-00215
The Honorable Morton Denlow, Judge Presiding

---

## PETITION FOR PERMISSION TO APPEAL
## ORDER GRANTING CLASS ACTION CERTIFICATION

---

Albert E. Hartmann, Counsel of Record
DLA PIPER LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601-1293
312.368.2142

Perrie M. Weiner
Joshua Briones
DLA PIPER LLP (US)
2000 Avenue of the Stars,
Suite 400 North Tower
Los Angeles, California 90067-4704
310.595.3000

*Attorneys for Petitioner-Appellant Convergys Customer Management Group Inc.*

WEST\238123454.1

# CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: _____

Short Caption:   *Nicholas Martin v. Dun & Bradstreet, Inc. and Convergys Customer Management Group Inc.*

(1) The full name of every party that the attorney represents in the case:

    *Convergys Customer Management Group Inc.*

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    *DLA Piper LLP (US)*

(3) If the party is a corporation: (i) Identify all its parent corporations;

    *Convergys Corporation*

(ii) List any publicly held company that own 10% or more of the party's stock:

    *Convergys Corporation*

Attorney's Signature:   s/Albert E. Hartmann   Date: September 4, 2012
Attorney's Printed Name: Albert E. Hartmann

Please indicate if you are Counsel of Record
for the above listed party pursuant to Circuit Rule 3(d).   Yes

DLA Piper LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, IL 60601
312.368.2142
F: 312.630.7317
albert.hartmann@dlapiper.com

# CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: _____

Short Caption:     *Nicholas Martin v. Dun & Bradstreet, Inc. and Convergys Customer Management Group Inc.*

(1) The full name of every party that the attorney represents in the case:

     *Convergys Customer Management Group Inc.*

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

     *DLA Piper LLP (US)*

(3) If the party is a corporation: (i) Identify all its parent corporations;

     *Convergys Corporation*

(ii) List any publicly held company that own 10% or more of the party's stock:

     *Convergys Corporation*

Attorney's Signature:     s/Perrie M. Weiner      Date: September 4, 2012
Attorney's Printed Name: Perrie M. Weiner

Please indicate if you are Counsel of Record
for the above listed party pursuant to Circuit Rule 3(d).     No

DLA PIPER LLP (US)
2000 Avenue of the Stars, Suite 400 North Tower
Los Angeles, California 90067-4704
310.595.3000
F: 310.595.3300
perrie.weiner@dlapiper.com

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: _____

Short Caption: *Nicholas Martin v. Dun & Bradstreet, Inc. and Convergys Customer Management Group Inc.*

(1) The full name of every party that the attorney represents in the case:

*Convergys Customer Management Group Inc.*

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

*DLA Piper LLP (US)*

(3) If the party is a corporation: (i) Identify all its parent corporations;

*Convergys Corporation*

(ii) List any publicly held company that own 10% or more of the party's stock:

*Convergys Corporation*

Attorney's Signature: <u>s/Joshua Briones</u>      Date: September 4, 2012
Attorney's Printed Name: Joshua Briones

Please indicate if you are Counsel of Record
for the above listed party pursuant to Circuit Rule 3(d).    No

DLA PIPER LLP (US)
2000 Avenue of the Stars, Suite 400 North Tower
Los Angeles, California 90067-4704
310.595.3000
F: 310.595.3300
joshua.briones@dlapiper.com

WEST\238123454.1

**Introduction**

Convergys Customer Management Group Inc. ("Convergys") is in an untenable position. The district court certified a class based on a virtually non-existent record and without any discussion or analysis of Rule 23 of the Federal Rules of Civil Procedure. All that was before the district court was the complaint, an unsupported motion for class certification filed for the sole purpose of preventing defendants from "picking off" the named plaintiff with an offer of judgment, and an order granting a motion to compel discovery responses from Convergys's co-defendant. Because it did not allow class certification briefing, the district court had no record which could support the "rigorous analysis" required to certify a class, and thus ignored the requisite analysis entirely.

The district court—dissatisfied with Convergys's co-defendant's response to the order granting the motion to compel—certified a class to force the co-defendant to respond to discovery. In doing so, the district court ignored that its order penalizes Convergys for the actions of its co-defendant—a company not affiliated with Convergys and represented by separate counsel—during discovery; there is no suggestion that Convergys was non-compliant or in any way to blame. Reversal of class certification on interlocutory appeal is Convergys's only viable method to ensure that the district court does not use class certification as a blunt discovery sanction (punishing Convergys for the discovery failures of its co-defendant) and instead follows Rule 23 and this Court's unambiguous precedent by engaging in full and fair consideration of a complete record before certifying a class.

**Statement of Jurisdiction**

Plaintiff Nicholas Martin ("Martin") asserts an individual and class claim against defendants Dun and Bradstreet, Inc. ("D&B") and Convergys under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"). Accordingly, the district court has federal question jurisdiction under 28 U.S.C. § 1331.

On August 21, 2012, the district court entered a minute order certifying a class. (R.37 (attached as Ex. A).)[1] This Court has jurisdiction to entertain Convergys's petition under Rule 23(f) of the Federal Rules of Civil Procedure and Rule 5(a) of the Federal Rules of Appellate Procedure. Convergys timely filed its petition within fourteen (14) days of the district court's entry of its class certification order.

**Question Presented**

Can a district court, without briefing or notice, avoid conducting the required "rigorous analysis" of Rule 23's class certification requirements and instead certify a class as a discovery sanction to "get the attention" of one co-defendant?

**Facts Necessary to Understand the Question Presented**

*State of the Pleadings and the Record*

On January 11, 2012, Martin filed his one-count complaint asserting that D&B and Convergys—which was acting on D&B's behalf—violated the TCPA by using an automatic telephone dialing system to call to Martin's cellular phone. (R.1 ¶¶ 9-10.) Martin also sought certification of a class of people who allegedly received similar calls to cellular phones but confined his class to calls "where defendant obtained the

---

[1] Citations to "R.___" reference the district court' docket number, followed by the page or paragraph number where appropriate.

2

phone number from some source other than directly from the called party." (R.1 ¶ 15.) Convergys (R.25) and D&B (R.26) filed answers and affirmative defenses.

When Martin filed his complaint, he also filed a motion for class certification that was not supported by any evidence relating to Convergys or D&B. (R.4.) As Martin acknowledged, the motion was filed to prevent "the plaintiff from being 'picked off' through a Rule 68 or individual settlement offer," and Martin intended to take discovery before filing a properly supported memorandum seeking class certification. (R.4 ¶ 7.)

Consistent with the place-holding nature of the motion, Martin never presented his class certification motion to the district court. When the parties consented to try the case before Magistrate Judge Denlow, all pending motion dates (including the date for presentation of Martin's motion for class certification) were stricken and the parties were ordered to re-notice any pending motions before Judge Denlow. (R.15.) Because its filing accomplished the stated purpose of preventing him from being "picked off," Martin never re-noticed his motion for class certification.

Martin, Convergys and D&B all intended that Martin would file a memorandum supporting class certification bolstered by evidence at the close of discovery, at which point the parties would fully brief the motion. In the Parties' Report of Planning Meeting, Martin, Convergys and D&B jointly informed the district court of this intention: "Upon completion of discovery (as discussed above), Plaintiff expects to renew/supplement that motion [for class certification], at which time the parties and the Court will set an appropriate briefing schedule." (R.28 at 5.)

*Martin's Motion to Compel Discovery From D&B*

Consistent with the stated intention to complete discovery before filing a properly-supported motion for class certification, on February 29, 2012, Martin propounded discovery to both Convergys and D&B. (R.33 ¶ 3.) As part of discovery, Martin sought to identify the class, and his first interrogatory asked for a list of all calls to the defined class, which was again limited to calls "where defendant obtained the phone number from some source other than directly from the called party." (R.33 at 8-9.)

Convergys responded to Martin's discovery. Among other things, Convergys explained that it had been hired by D&B to update records in D&B's database, but did not have access to that database or information about the source of the records that it was updating for D&B. Martin did not file any motions challenging Convergys's discovery responses or otherwise ask the district court to compel Convergys to produce additional information or supplemental responses.

D&B also responded to Martin's discovery requests. D&B initially responded on April 2, 2012, but after meet-and-confer efforts, agreed to provide supplemental responses. (R.33 ¶¶ 3-4.) In particular, and as Martin and D&B advised the district court during a status hearing, D&B agreed to provide responses to the class-based discovery by June 19, 2012. (R.33 ¶ 4.) When D&B indicated that it could not meet this deadline, Martin filed a motion to compel asking only that a date-certain for D&B's discovery responses be set. (R.33.) The district court granted the motion to

compel, ordered that D&B respond to all of Martin's outstanding discovery by August 15, 2012, and set a status hearing for August 21, 2012. (R.36.)

*The District Court's Sua Sponte Class Certification Order*

The parties appeared before the district court for the August 21, 2012 status hearing. Martin's counsel began the hearing by describing what he viewed as D&B's "total non-compliance" with the order granting the motion to compel. (Transcript of Aug. 21, 2012 Hearing ("Tran.") 3:9-4:1 (attached as Ex. B).) In response, D&B's counsel focused on the key issue—Martin's request "for [D&B] to identify all automated calls for each of the phone numbers in the class that plaintiff has described" (Tran. 4:13-18)—and explained that D&B did not have an "automated way of tracking back each phone number to determine the source, to comply with the plaintiff's class definition." (Tran. 5:12-17.)[2]

After listening to D&B's explanation, the district court commented that "**I don't see much has happened in terms of responding to the discovery**. So what I'm inclined to do is certify the class and then let you figure out a way to decertify it." (Tran. 5:25-6:4 (emphasis added).) When Convergys and D&B objected, the district court again explained that granting class certification was intended to prompt discovery responses from D&B: "Certifying a class and then letting you if later you want to seek to decertify seems to be **the only way to get your attention on this** to move the case forward." (Tran. 7:11-13 (emphasis added); *see also* Tran. 8:5-8 ("So that way your – the ball is now in your court to come forward

---

[2] Absent an automated way to identify the source of the called numbers, the defined class is not ascertainable because identifying the class members would require individualized proof for each class member, as opposed to the common proof required for class certification.

with the information. **I can't figure out any other way to get you to come forward with it**.") (emphasis added).)

When Convergys explained that the motion to compel had not been directed against Convergys, and that Convergys was being denied the opportunity to brief class certification, the district court responded by again explaining that it was granting class certification to prompt additional discovery responses from D&B:

> And that's why this is without prejudice. So, you know, you are not in any way – you are not in any way prevented – I want to make this clear – from raising any of those objections or anything else you want to raise. But **I need the defendants to begin taking action**. And if one of the defenses you have is, we have these consents, then I expect that Mr. Burke is going to see that.
>
> If one of your other defenses is something else – I mean, obviously my preference is always to have the plaintiff go forward and – and do it. But I just – **I just feel like Mr. Burke has been facing a stone wall here**.

(Tran. 9:17-10:2 (emphasis added).)

Conspicuously absent from the district court's oral certification ruling is any mention of Rule 23 or the specific elements that Martin was required to establish to demonstrate that the proposed class could be certified. Consistent with its *sua sponte* oral ruling, the district court entered a minute order certifying the class. (R.37.) That order provides no additional analysis or discussion of Rule 23:

> Status hearing held on 8/21/2012 and continued to 12/6/2012 at 10:00 a.m. **For the reasons stated in open court**, Plaintiff's motion for Class Certification [4] is granted without prejudice subject to the Defendants seeking to decertify the class on or before 12/19/2012. The class is hereby defined as all persons nationwide who defendant or some person on its behalf called on their cell

> phone using a device that has the capacity to dial numbers without human intervention, where defendant obtained the phone number from some source other than directly from the called party, where any call was made between and including a date two years prior to the filing of this action, ongoing.

(R.37 (emphasis added).)

### Relief Sought

Convergys requests that this Court grant it permission to appeal the district court's August 21, 2012 order granting class certification under Rule 23(f) of the Federal Rules of Civil Procedure. On appeal Convergys will seek reversal of the district court's order, decertification of the class, and a remand for proceedings consistent with Rule 23.

### Convergys's Appeal Should Be Allowed And Is Authorized By Rule

Under Rule 23(f) of the Federal Rules of Civil Procedure, this Court "may permit an appeal from an order granting or denying class-action certification under this rule if a petition for permission to appeal is filed with the circuit clerk within 14 days after the order is entered." Rule 23(f) review is appropriate in this case.

As this Court explained, interlocutory review of orders granting class certification may be appropriate because "just as a denial of class status can doom the plaintiff, so a grant of class status can put considerable pressure on the defendant to settle, even when the plaintiff's probability of success on the merits is slight." *Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 834 (7th Cir. 1999). One risk in this situation is "that some plaintiffs or even some district judges may be tempted to use the class device to wring settlements from defendants whose legal

positions are justified but unpopular." *Id*. Accordingly, "when the stakes are large and the risk of a settlement or other disposition that does not reflect the merits of the claim is substantial, an appeal under Rule 23(f) is in order." *Id*. at 835.

That is precisely the situation faced by Convergys here. The district court used class certification to "wring" discovery from D&B, with Convergys being collateral damage. Convergys is now faced with the daunting task of decertifying a class which was certified without any analysis or discussion. This untenable position raises the stakes considerably for Convergys, which is now essentially liable to an unknown class of people because of the district court's reaction to its co-defendant's actions in discovery. The potentially crushing TCPA damages—which are out of all proportion to the alleged harm—puts "considerable pressure" on Convergys to reach a class-wide settlement, regardless of the merits of Martin's case. *See CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724 (7th Cir. 2011) (noting coercive force of uncapped TCPA damages of $500 to $1,500 per violation, i.e., call or unsolicited facsimile, underlies need for "rigorous analysis" before certifying class). This is the very situation Rule 23(f) prevents by allowing interlocutory appeals to challenge improvident class certification orders.

Before this Court exercises its discretion under Rule 23(f), however, Convergys must satisfy this Court that the district court's grant of class certification is "questionable." *Blair*, 181 F.3d at 835. That is an easy burden for Convergys to carry here.

Rule 23 specifically provides that a class action may be maintained "only if" all four (4) of Rule 23(a) prerequisites are satisfied and if the case is one of the types of cases identified in Rule 23(b). Fed. R. Civ. P. 23(a)-(b). Consistent with the plain language of Rule 23, this Court requires district courts to undertake a "rigorous analysis" of Rule 23's requirements before certifying a class: "A class 'may only be certified if the trial court is satisfied, *after a rigorous analysis*, that the prerequisites of Rule 23(a) have been satisfied.'" *CE Design*, 637 F.3d at 723, *citing General Telephone Co. v. Falcon*, 457 U.S. 147, 161 (1982). "The need for rigorous analysis of a motion to certify a class is for the protection not of defendants alone but of the class members as well." *CE Design*, 637 F.3d at 723. This Court will "reverse the class-certification decision only when we find an abuse of discretion. If, however, the district court applies an incorrect legal rule as part of its decision, then the framework within which it has applied its discretion is flawed, and the decision must be set aside as an abuse." *Ervin v. OS Restaurant Servs., Inc.*, 632 F.3d 971, 976 (7th Cir. 2011) (internal citations omitted).

In this case, the district court eschewed any discussion of Rule 23's requirements and instead certified the class "without prejudice" in a bare-bones order designed as a discovery sanction against D&B. A class certification order entered by a judge "before making any of the determinations … that Rule 23 makes prerequisite to certification" cannot stand, and "the prerequisites cannot be bypassed" by the expectation of the plaintiff "eventually establishing that the prerequisites for class

status have been met." *Isaacs v. Sprint Corp.*, 261 F.3d 679, 682 (7th Cir. 2001) (granting Rule 23(f) review and reversing class certification).[3]

It is no answer that the district court merely granted a long-pending motion for class certification. That motion was designed to be a place holder, and even Martin did not suggest that his motion contained the requisite factual and legal support to establish all of Rule 23's class certification requirements. In any event, beyond mentioning the motion briefly during the status hearing, the district court did not cite to or otherwise rely upon the motion to support class certification.

The ambiguities inherent in the defined class precipitously certified by the district court highlight the reason that this Court requires a "rigorous analysis" before certifying a class. For example, the defined class refers to the "defendant," when both Convergys and D&B are defendants, thus making it impossible to determine which defendants' actions—if any—form the basis for the allegedly common evidence which must be used to identify and define the class. Moreover, D&B explained to the district court that it could not trace the source of all of the numbers at which potential class members were called by Convergys, and thus could not identify the class as defined. Certification of a class specifically defined by

---

[3] The same logic applies to mandate reversal of the district court's order, which bypasses Rule 23's prerequisites under the guise of allowing Convergys and D&B time to move to decertify. This is especially true as "an order certifying a class usually is the district judge's last word on the subject … Before deciding whether to allow a case to proceed as a class action, therefore, a judge should make whatever factual and legal inquiries are necessary under Rule 23. *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001) (granting Rule 23(f) review and reversing class certification). The last word for Convergys on class certification should not be silence as the district court sanctions D&B for its discovery responses.

the source of the called phone number cannot change this. Thus, the parties are left with a certified class which can neither be identified nor provided with notice.

Rule 23 and this Court's precedent do not allow both Martin and the district court to gloss over key issues when certifying a class and then force the defendants to move to decertify. Rather, the "rigorous analysis" identifies and, if possible, cures these very types of issues before a class is certified. And it is Martin's burden to demonstrate that Rule 23 certification is appropriate.

**Conclusion**

Because the district court certified a class as a discovery sanction against D&B, it failed to perform the "rigorous analysis" required by this Court and Convergys had no meaningful opportunity to oppose certification. Rule 23 does not allow a bare-bones certification order which shifts the burden to Convergys to disprove the propriety of class certification. Absent immediate appellate review, the stakes of the litigation for Convergys will increase so substantially that Convergys will feel "considerable pressure" to settle on a class-wide basis. Therefore, this Court should allow Convergys to appeal the grant of class certification, reinforcing the clear law in this Circuit that all class certification orders require "rigorous analysis" of Rule 23's requirements.

Dated: September 4, 2012,                    Respectfully submitted,

                                             **CONVERGYS CUSTOMER**
                                             **MANAGEMENT GROUP INC.**

                                    By:      /s/ Albert E. Hartmann
                                             One of Its Attorneys

Albert E. Hartmann, Counsel of Record
DLA PIPER LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601
312.368.2142
F: 312.630.7317
albert.hartmann@dlapiper.com

Perrie M. Weiner
Joshua Briones
DLA PIPER LLP (US)
2000 Avenue of the Stars, Suite 400 North Tower
Los Angeles, California 90067-4704
310.595.3000
F: 310.595.3300
perrie.weiner@dlapiper.com
joshua.briones@dlapiper.com

# Exhibit E

Plaintiff's Motion for Class Certification

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NICHOLAS MARTIN on behalf of himself and others similarly situated, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DUN & BRADSTREET, INC., and | ) |
| CONVERGYS CUSTOMER MANAGEMENT | )   JURY DEMANDED |
| GROUP, INC. | ) |
| Defendants. | |

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Plaintiff respectfully requests that, pursuant to both Fed.R.Civ.P. 23(b)(2) and 23(b)(3), this Court certify this Telephone Consumer Protection Act case as a class action for the following class of similarly situated persons:

> All persons nationwide who defendant or some person on its behalf called on their cell phone using a device that has the capacity to dial numbers without human intervention, where defendant obtained the phone number from some source other than directly from the called party, where any call was made between and including a date two years prior to the filing of this action, ongoing.

Plaintiff further requests that the Court appoint plaintiff Nicholas Martin as the class representative, and Burke Law Offices, LLC as class counsel.

In further support of this motion, plaintiff states:

1.     Defendants called plaintiff on his cell phone using a predictive dialer in January 2012. Plaintiff has no relationship with either defendant.

2.     The TCPA, 47 U.S.C. §227(b) prohibits any person, including debt collection agencies, from calling cell phones using autodialers and/or prerecorded messages; so-called "robocalls." *Sengenberger v. Credit Control Services, Inc.*, 2010 WL 1791270 (N.D.Ill. May 5,

1

2010) (Zagel, J.). Any telephone system that has the capacity to dial numbers without human intervention is a "predictive dialer" and is regulated by the Act.

3.      The TCPA is a strict liability statute, and there is no "bona fide error" defense available, *CE Design Ltd. v. King Architectural Metals, Inc.*, __ F.3d__, 2011 WL 938900, at * 1 (7th Cir. March 18, 2011); *Hicks v. Client Services, Inc.*, 2009 WL 2365637 (S.D.Fla. June 9, 2009) (summary judgment entered in favor of plaintiff); *Powell v. West Asset Management, Inc.*, 1:10-cv-7852, 2011 WL 1126040 (N.D.Ill. March 24, 2011) (striking "mitigation of damages" affirmative defense).

4.      Numerous TCPA class actions have been certified. Three such certification orders, Pesce v. First Credit Services, Inc., 11-cv-1379 (N.D.Ill. December 19, 2011) (Exhibit A); *Balbarin v. North Star Capital Acquisition*, LLC, 2010 C 1846, 2011 U.S. Dist. LEXIS 686 (N.D. Ill. Jan. 5, 2011), and *Mitchem v. Illinois Collection Service*, 2009 C 7274, 2011 U.S. Dist. LEXIS 714 (N.D. Ill. Jan. 3, 2011) were §227(b) autodialer/prerecorded message cases against debt collection agencies, and are analogous to this case.

5.      So-called "junk fax" TCPA cases, which are regularly certified in this District, are also analogous to this one. The Seventh Circuit recently refused to reverse Judge Bucklo's certification of a TCPA "junk fax" case on any ground other than the adequacy of the questionably truthful class representative in *CE Design Ltd. v. King Architectural Metals, Inc.*, __ F.3d__, 2011 WL 938900 (7th Cir. March 18, 2011). While the District Judge was instructed to reevaluate adequacy, the Seventh Circuit stated that the merits of the case, including the defendant's "consent" defense "-win or lose - might well be suitable for determination on a classwide basis." *Id.* at *7.

6.      Other TCPA class certifications abound.  *Sadowski v. Med1 Online, LLC*, 07 C 2973, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill., May 27, 2008); *Hinman v. M & M Rental Ctr.*, 06 C 1156, 2008 U.S. Dist. LEXIS 27835 (N.D.Ill., April 7, 2008); *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642 (W.D.Wash. 2007);  *Gortho, Ltd., v. Websolv*, 03 CH 15615 (Cir. Ct. Cook Co., March 6, 2008); *Travel 100 Group, Inc. v. Empire Cooler Service, Inc.*, 03 CH 14510, 2004 WL 3105679 (Cook Co. Cir. Ct., Oct. 19, 2004); *Rawson v. C.P. Partners LLC*, 03 CH 14510 (Cook Co. Cir. Ct., Sept. 30, 2005); *Lampkin v. GGH, Inc.*, 146 P.3d 847 (Okla. Ct. App. 2006); *Display South, Inc. v. Express Computer Supply, Inc.*, 961 So.2d 451, 455 (La. App. 1st Cir. 2007); *Display South, Inc. v. Graphics House Sports Promotions, Inc.*, 992 So. 2d 510 (La. App. 1st Cir. 2008); *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.*, 203 Ariz. (App.) 94, 50 P.3d 844 (2002); *Core Funding Group, LLC v. Young*, 792 N.E.2d 547 (Ind.App. 2003); *Nicholson v. Hooters of Augusta, Inc.*, 245 Ga.App. 363, 537 S.E.2d 468 (2000) (private class actions).

7.      Plaintiff files this motion along with the complaint in order to avoid the plaintiff from being "picked off" through a Rule 68 or individual settlement offer, as suggested by some court decisions.  *Greisz v. Household Bank*, 176 F.3d 1012 (7th Cir. 1999), and its progeny. While plaintiff does not believe *Griesz* is controlling or efficient, counsel feels it is appropriate under the circumstances to file this motion early in the case in order to avoid the situation entirely. Plaintiff requests that the Court set a briefing schedule sufficiently long so that plaintiff may take additional discovery and file a memorandum of law in support of this motion. Alternatively, the Court may enter and continue this motion.

8.      All requirements of Rule 23 of the Federal Rules of Civil Procedure have been met.

9.    <u>Numerosity</u>.  There is no reason to purchase or use a predictive dialer, other than to make a large volume of calls.

10.    Furthermore, given the nature of the alleged violations, i.e. making automatically dialed and prerecorded message telephone calls to debtors, it is reasonable to infer that the defendant made impermissible robocalls to more than the 40 or so individuals necessary to satisfy numerosity.  Joinder is therefore impracticable and satisfy numerosity for certification purposes.  Fed.R.Civ.P. 23(a)(1).  Plaintiff requests time enough in briefing this motion in order to obtain discovery on this issue.

11.    <u>Common Questions Predominate</u>.  There exist common questions of law and fact, which predominate over any individual questions.  The class definition ensures that all of class members have identical claims; both factually and legally.  Fed.R.Civ.P. 23(a)(2) & 23(b)(3).

12.    <u>Typicality</u>.  Similarly, the plaintiff's claims are typical of the other class members. All of the claims are based upon a substantially identical set of facts and circumstances. Fed.R.Civ.P. 23(a)(3).  The same dialers and similar messages were used for the entire class.

13.    <u>Adequacy</u>.  Plaintiff and counsel will fairly and adequately represent the class. Plaintiff's interests in this litigation are aligned with those of the class, and he has hired a lawyer experienced in class action and consumer litigation.  <u>Exhibit B</u>.  Fed.R.Civ.P. 23(a)(4).

14.    <u>Defendant's Actions Applicable Generally</u>.  The defendant has acted or failed to act on grounds generally applicable to each class member, and it is these generalized actions around which this case revolves.  Defendant called each class member on his or her cellular telephone using an autodialer and prerecorded message. Class-wide Injunctive relief under the TCPA 47 U.S.C. §227(b)(3)(A), along with corresponding declaratory relief is therefore

appropriate.  Fed.R.Civ.P. 23(b)(2).  All class members, who are the incorrect party, would benefit from the cessation of these annoying calls and defendant's opt-out policy.

15.  <u>Superiority</u>.  It is desirable to have this case litigated as a class action because the class mechanism is superior to individual actions.  Plaintiff is not aware of any other cases alleging similar facts against these defendants; likely because the other members of the class are not aware that their rights have been violated.  Further, a class action is necessary to determine that defendants' conduct is a violation of law and to redress the class members' statutory damages.  Fed.R.Civ.P. 23(b)(3).  The issue of whether defendant's equipment and messages complied with the TCPA predominates over any individual issues that may arise.

16.  Because the prerequisites of Fed.R.Civ.P. 23(b)(2) and 23(b)(3) are satisfied, this Court should certify the class.  Plaintiff requests that the Court set a briefing schedule for this motion sufficient to permit time for service of the complaint, discovery and the filing of a supplemental memorandum in support of this motion.

WHEREFORE, plaintiff respectfully requests that this Court certify this case as a class action as to the class defined herein, and appoint plaintiff Nicholas Martin as class representative, and Burke Law Offices, LLC as class counsel.

Respectfully submitted,

/s/Alexander H. Burke

Alexander H. Burke
**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288

(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VITO A. PESCE, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 11 C 1379 |
| v. | ) ) | Judge Robert W. Gettleman |
| FIRST CREDIT SERVICES, INC., d/b/a Accounts Receivable Technologies, | ) ) ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Vito Pesce, on behalf of himself and all others similarly situated, has sued

defendant First Credit Services, Inc., d/b/a Accounts Receivable Technologies for violating the

provision of the Telephone Consumer Protection Act ("TCPA") that makes it unlawful for "any

person . . . to make any call (other than a call . . . made with the prior express consent of the

called party) using any automatic telephone dialing system or an artificial or pre-recorded voice

. . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. §

227(b)(1)(A)(iii). Plaintiff has moved to certify a class consisting of:

> all persons within the State of Illinois who, on or after January 1, 2010, and on or
> before February 28, 2011, received a non-emergency telephone call from
> defendant to a cellular telephone through the use of an automatic telephone
> dialing system or an artificial or prerecorded voice and where defendant's records
> do not show that the person provided the number to the defendant or the original
> creditor (for example, where the number was obtained through skip tracing or
> captured by the defendant's equipment from an inbound call).

For the reasons discussed below, plaintiff's motion is granted.

Class action suits are governed by Fed. R. Civ. P. 23. A two step analysis is required to

determine if class certification is appropriate. First, plaintiff must satisfy all four requirements of

Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.

Harriston v. Tribune Co., 992 F.2d 697, 703 (7th Cir. 1993).  Second, the action must satisfy one

of the conditions of Rule 23(b).  Joncek v. Local 714 International Teamsters Health & Welfare

Fund, 1999 WL 755051 at *2 (N.D. Ill. 1999).  Plaintiff seeks certification under Rule 23(b)(3),

which requires the court to find that "questions of law or fact common to class members

predominate over any questions affecting only individual members, and that a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy."

Defendant argues that the proposed class fails to meet the typicality requirement, and that

plaintiff is not an adequate class representative.  Both of these objections are based on

defendant's claim that it obtained plaintiff's telephone number from GMAC, plaintiff's original

creditor.  Therefore, according to defendant, plaintiff consented to receive auto-dialed calls,

although the class definition includes only those persons who have not provided their telephone

number to defendant or the original creditor.  "Where the named plaintiff's claim may fail on

grounds unique to the named plaintiff . . . the typicality requirement for class certification may

not be satisfied." Gilmore v. Southwestern Bell Mobile Systems, L.L.C., 2002 WL 548704 at *3

(N.D. Ill. 2002).

The record, however, does not support defendant's characterization of the facts.

Plaintiff's telephone number is not found in either defendant's or GMAC's records.  Plaintiff's

wife's number is listed in GMAC's records, and her number is apparently only one digit

different from plaintiff's.  Plaintiff's number, however, is not in any of the records and there is

nothing in those records to suggest that plaintiff consented to be called.  Accordingly, the court

rejects defendant's objections to typicality and adequacy of representation.

Defendant's other objections to class certification are equally without merit. Individual questions do not predominate over questions common to the class. The class includes only those persons who have been contacted on their cellular phone and who have not consented to the calls. Defendant's objections go to whether a person is a member of the class in the first instance, not to the nature of the claim of properly identified class members.

Accordingly, plaintiff's motion for class certification is granted. The class is defined as:

all persons within the State of Illinois who, on or after January 1, 2010, and on or before February 28, 2011, received a non-emergency telephone call from defendant to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and where defendant's records do not show that the person provided the number to the defendant or the original creditor.

This matter is set for a report on status on January 4, 2012 at 9:00 a.m.

**ENTER:** **December 19, 2011**

**Robert W. Gettleman**
**United States District Judge**

3

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NICHOLAS MARTIN on behalf of himself and )
others similarly situated, )
  Plaintiff, )
 )
   v. )
 )
DUN & BRADSTREET, INC., and )
CONVERGYS CUSTOMER MANAGEMENT ) JURY DEMANDED
GROUP, INC. )
  Defendants.

**<u>DECLARATION OF ALEXANDER H. BURKE</u>**

I am Alexander H. Burke, manager of Burke Law Offices, LLC.

In September 2008, I opened Burke Law Offices, LLC. This firm concentrates on consumer class action and consumer work on the plaintiff side. Since the firm began, it has prosecuted cases for consumers under the Fair Debt Collection Practices Act, Fair Credit Reporting Act, Equal Credit Opportunity Act, Electronic Funds Transfer Act, Illinois Consumer Fraud Act, Truth in Lending Act and the Fair Labor Standards Act, among others. The firm also occasionally accepts mortgage foreclosure defense or credit card defense case. Except for debt collection defense cases, the firm works almost exclusively on a contingency basis.

My legal career began at Edelman, Combs, Latturner & Goodwin, LLC, in Chicago, Illinois, where I spent nearly three years litigating exclusively consumer cases. I estimate that approximately sixty-five percent of those cases were class actions. In 2007, I joined the Law Offices of Keith J. Keogh, Ltd., another consumer rights law firm, where my practice was again limited almost exclusively to consumer class action.

I make substantial efforts to remain current on the law, including class action issues. I attended the National Consumer Law Center Consumer Rights Litigation Conference in 2006, 2007, 2008 and 2009, and was an active participant in the Consumer Class Action Intensive Symposium at each of those conferences. In October 2009, I spoke on a panel of consumer class action attorneys welcoming newcomers to the conference. In addition to regularly attending Chicago Bar Association meetings and events, I am the vice-chair of the Chicago Bar Association's consumer protection section, and in November 2009, I moderated a panel of judges and attorneys discussing recent events and decisions concerning arbitration of consumer claims and class action bans in consumer contracts.

Some notable class actions and other cases that I have worked on include:

*Soppet v. Enhanced Recovery Co.*, 2011 WL 3704681(N.D.Ill. Aug 21, 2011)(TCPA defendant's summary judgment motion denied); *D.G. ex rel. Tang v. William W. Siegel & Associates, Attorneys at Law, LLC*, 2011 WL 2356390 (N.D.Ill. Jun 14, 2011); *Powell v. West Asset Management, Inc.*, 773 F.Supp.2d 898 (N.D.Ill. 2011)(debt collector TCPA defendant's "failure to mitigate" defense stricken for failure to state a defense upon which relief may be granted); *Fike v. The Bureaus, Inc.*, 09-cv-2558 (N.D.Ill. Dec. 3, 2010) (final approval granted for $800,000 TCPA settlement in autodialer case against debt collection agency); *Greene v. DirecTV, Inc.*, 2010 WL 1506730 (N.D.Ill. April 14, 2010) (motion to dismiss denied as to class TCPA and FCRA claims); *Donnelly v. NCO Financial Systems, Inc.*, 263 F.R.D. 500 (N.D.Ill. Dec. 16, 2009) Fed.R.Civ.P. 72 objections overruled in toto, --- F.Supp.2d ----, 2010 WL 308975 (N.D.Ill. Jan 13, 2010) (novel class action and TCPA discovery issues decided favorably to class); *Cicilline v. Jewel Food Stores, Inc.*, 542 F.Supp.2d 831 (N.D.Ill. 2008) (FCRA class certification granted); 542 F.Supp.2d 842 (N.D.Ill. 2008) (plaintiffs' motion for judgment on pleadings granted); *Harris v. Best Buy Co.*, 07 C 2559, 2008 U.S. Dist. LEXIS 22166 (N.D.Ill. March 20, 2008) (Class certification granted); *Matthews v. United Retail, Inc.*, 248 F.R.D. 210 (N.D.Ill. 2008) (FCRA class certification granted); *Redmon v. Uncle Julio's, Inc.*, 249 F.R.D. 290 (N.D.Ill. 2008) (FCRA class certification granted); *Harris v. Circuit City Stores, Inc.*, 2008 U.S. Dist. LEXIS 12596, 2008 WL 400862 (N.D. Ill. Feb. 7,2008) (FCRA class certification granted); aff'd upon objection (Mar. 28, 2008); *Harris v. Wal-Mart Stores, Inc.*, 2007 U.S. Dist. LEXIS 76012 (N.D. Ill. Oct. 10, 2007) (motion to dismiss in putative class action denied); *Barnes v. FleetBoston Fin. Corp.*, C.A. No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072 (D.Mass. Aug. 22, 2006) (appeal bond required for potentially frivolous objection to large class action settlement, and resulting in a $12.5 million settlement for Massachusetts consumers); *Longo v. Law Offices of Gerald E. Moore & Assocs.*, P.C., 04 C 5759, 2006 U.S. Dist. LEXIS 19624 (N.D.Ill. March 30, 2006) (class certification granted); *Nichols v. Northland Groups, Inc.*, case nos. 05 C 2701, 05 C 5523, 06 C 43, 2006 U.S. Dist. LEXIS 15037 (N.D.Ill. March 31, 2006) (class certification granted for concurrent classes against same defendant for ongoing violations); *Lucas v. GC Services, L.P.*, case No. 2:03 cv 498, 226 F.R.D. 328 (N.D.Ind. 2004) (compelling discovery), 226 F.R.D. 337 (N.D.Ind. 2005) (granting class certification); *Murry v. America's Mortg. Banc, Inc.*, case nos. 03 C 5811, 03 C 6186, 2005 WL 1323364 (N.D. Ill. May 5, 2006) (Report and Recommendation granting class certification), aff'd, 2006 WL 1647531 (June 5, 2006); *Rawson v. Credigy Receivables, Inc.*, case no. 05 C 6032, 2006 U.S. Dist. LEXIS 6450 (N.D. Ill. Feb. 16, 2006) (denying motion to dismiss in class case against debt collector for suing on time-barred debts).

I graduated from Colgate University in 1997 (B.A. International Relations), and from Loyola University Chicago School of Law in 2003 (J.D.). During law school I served as an extern to the Honorable Robert W. Gettleman of the District Court for the Northern District of Illinois and as a law clerk for the Honorable Nancy Jo Arnold, Chancery Division, Circuit Court of Cook County. I also served as an extern for the United

States Attorney for the Northern District of Illinois and was a research assistant to adjunct professor Honorable Michael J. Howlett, Jr.

I was the Feature Articles Editor of the Loyola Consumer Law Review and Executive Editor of the International Law Forum. My published work includes International Harvesting on the Internet: A Consumer's Perspective on 2001 Proposed Legislation Restricting the Use of Cookies and Information Sharing, 14 Loy. Consumer L. Rev. 125 (2002).

I became licensed to practice law in the State of Illinois in 2003 and the State of Wisconsin in March 2011, and am a member of the bar of the United States Court of Appeals for the Seventh and First Circuits, as well as the Northern District of Illinois, Central District of Illinois, Southern District of Illinois, Eastern District of Wisconsin, Northern District of Indiana and Southern District of Indiana. In 2009-10, I was the vice chair of the Consumer Protection section of the Chicago Bar Association, and was the chair of that group for the 2010-2011 year. I am also a member of the Illinois State Bar Association, the Seventh Circuit Bar Association and the American Bar Association, as well as the National Association of Consumer Advocates.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed in Chicago, Illinois

September 28, 2011                                    /s/Alexander H. Burke

# Exhibit F

Convergys Customer Management Group, Inc.
Discovery Responses

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **NICHOLAS MARTIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:12-cv-00215** |
| | ) | |
| **DUN & BRADSTREET, INC. and** | ) | **Magistrate Judge Denlow** |
| **CONVERGYS CUSTOMER** | ) | |
| **MANAGEMENT GROUP INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### CONVERGYS CUSTOMER MANAGEMENT GROUP INC.'S
### RESPONSE TO PLAINTIFF'S FIRST DISCOVERY REQUESTS

Defendant Convergys Customer Management Group Inc. ("Convergys"),

under the Federal Rules of Civil Procedure, hereby responds to Plaintiff's First

Discovery Requests ("Requests") as follows:

### GENERAL OBJECTIONS AND PRELIMINARY STATEMENTS

A.    Convergys's responses set forth herein are based upon knowledge and

information that Convergys has been able to obtain as of the date of filing these

responses. Convergys reserves its right to supplement these responses in the event

that any additional responsive information may come to light, or in case of

inadvertent error or omission.

B.    Convergys objects to the Requests to the extent that they call for the

production of confidential, proprietary, and/or trade secret information. Convergys

will not produce confidential information except pursuant to a protective order

1

entered in this case, and it will not produce trade secret information unless ordered to do so by a court.

C.     Convergys objects to the Requests to the extent that they seek disclosure of the content of communications between Convergys and its legal counsel on the ground that such information is protected by the attorney-client privilege.

D.     Convergys objects to the Requests to the extent that they seek information or documents prepared in anticipation of litigation in this case on the grounds that such information and documents are protected under the work-product doctrine.

E.     Convergys objects to the Requests to the extent that they purport to impose obligations beyond those provided for by the Federal Rules of Civil Procedure.

F.     Convergys objects to the Requests as overly broad, unduly burdensome, and as not limited in scope to reasonably relate to the material allegations in this lawsuit or reasonably calculated to lead to the discovery of admissible evidence to the extent that they seek information that does not pertain to members of the putative class defined in the Complaint in this lawsuit.

G.     Convergys objects to Plaintiff's Requests as overly broad, unduly burdensome, and as not limited in scope to reasonably relate to the material allegations in this lawsuit or reasonably calculated to lead to the discovery of admissible evidence to the extent that they call for admissions, information, or

documents which do not pertain to Convergys's activities on behalf of Defendant Dun & Bradstreet, Inc. ("D&B"). Unless otherwise noted, all of Convergys's responses are confined and limited to its activities on behalf of D&B in order to update information in the D&B databases accessible to Convergys through the application "salesforce.com."

    H.    Convergys responds to these Requests without waiving any objections to relevance, privilege, or admissibility of any information provided by Convergys in any subsequent proceeding, or at the trial of this or any other action.

    I.    Convergys objects to the Plaintiff's definition of "you" as overly broad and unduly burdensome, and not limited in time or scope to reasonably relate to the material allegations in this lawsuit or reasonably calculated to lead to the discovery of admissible evidence. Accordingly, Convergys will respond to these Requests only to the extent that the term "you" is interpreted to mean Convergys Customer Management Group Inc.

    J.    Convergys objects to Plaintiff's overly broad and vague definition of the TCPA. Accordingly, Convergys will respond to these Requests only to the extent that the term "TCPA" (Telephone Consumer Protection Act) refers to 47 U.S.C. § 227 and 47 C.F.R. § 64.1200.

    K.    By its responses, Convergys does not indicate its agreement with Plaintiff's characterizations or express or implied assumptions, and does not make any admission that its conduct violated the TCPA, or that Plaintiff's interpretations of the TCPA are true and complete.

3

L.     Convergys objects to Plaintiff's definition of "Predictive Dialer" as vague and ambiguous due to its use of the undefined phrase "without human intervention." Convergys further objects to this definition as not limited scope to reasonably relate to the material allegations in this lawsuit or reasonably calculated to lead to the discovery of admissible evidence because that term is not defined in 47 U.S.C. § 227 or 47 C.F.R. § 64.1200.

M.     Convergys objects to the Requests to the extent that they cover the time period from January 1, 2006 to present. Accordingly, Convergys will respond to these Requests only to the extent that they include the two years preceding the filing of this lawsuit.

N.     Convergys objects to the Requests to the extent that they call for the production of documents or information relating to documents or information created, gathered, or assembled by Convergys or its attorneys after the filing of this lawsuit.

O.     In answering a Request by referring to documents from which information responsive to the Request may be derived, Convergys is not stating or implying that only those documents identified contain such information, but only that a full and complete answer to the Request can be derived, at least in part, from the referenced documents. Further, documents identified in response to one Request may also have information responsive to another Request whether or not identified in response to that other Request.

P.     All responses are made subject to and without waiver of Convergys's general and specific objections. These general and specific objections are incorporated in full into each of the responses below.

## RESPONSES TO REQUESTS FOR ADMISSION

1.      Convergys called 630-███3271 at least once in 2012.

**Response:  Admitted.**

2.      Convergys called 630-███3271 at least once in 2011.

**Response:  Denied.**

3.      Convergys called 630-███3271 at least once in 2010.

**Response:  Denied.**

4.      Convergys used a predictive dialer to call more than 10,000 telephone numbers on behalf of defendant Dun & Bradstreet in 2011.

**Response:  Based on its objection to Plaintiff's definition of "predictive dialer," and subject to and without waiving its objections, Convergys denies this Request.**

5.      Dun & Bradstreet authorized a January 2012 call made by Convergys to 630-███3271.

**Response:  Admitted.**

6.      Plaintiff did not provide 630-███3271 to Convergys.

**Response:  Admitted.**

7.      Plaintiff did not provide 630-███3271 to Dun & Bradstreet.

**Response:  After reasonable inquiry, the information known by or readily available to Convergys is insufficient to enable it to admit or deny this Request.**

8.      Convergys used telephone equipment that had the capacity to dial numbers without human intervention to call 630-███3271 in January 2012.

**Response:  Convergys objects to the use of the vague, ambiguous, and undefined phrase "without human intervention." Based on this**

**objection, and subject to and without waiving its other objections,**

**Convergys denies this Request.**

9.      You used telephone equipment that had the capacity to dial numbers without human intervention to call 630-███ 3271 in 2012.

**Response:   Convergys objects to the use of the vague, ambiguous,**

**and undefined phrase "without human intervention." Based on this**

**objection, and subject to and without waiving its other objections,**

**Convergys denies this Request.**

10.      Admit that no human being pressed the digits 630-███ 3271 for any call to plaintiff from any defendant in 2012.

**Response:   After reasonable inquiry, the information known by or**

**readily available to Convergys is insufficient to enable it to admit or deny**

**this Request.**

11.      Admit that telephone equipment and software dialed 630-███ 3271 when you called plaintiff in 2012.

**Response:   Convergys objects to Plaintiff's use of the vague,**

**ambiguous, and undefined phrase "telephone equipment and software."**

**Based on this objection, and subject to and without waiving its other**

**objections, Convergys denies this Request.**

12.      You were aware by January 2011 of the decision In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling, CG-278, 23 FCC Rcd. 559 (Jan. 4, 2008).

**Response:  Admitted.**

13.      You did not have a policy of scrubbing phone numbers you called using a predictive dialer at any time during 2010.

**Response:  Subject to and without waiving its objections, Convergys denies this Request.**

14.    You did not have a policy of scrubbing phone numbers you called using a predictive dialer at any time during 2011.

**Response:  Subject to and without waiving its objections, Convergys denies this Request.**

15.    You did not have a policy of scrubbing phone numbers you called using a predictive dialer at any time during January 2012.

**Response:  Subject to and without waiving its objections, Convergys denies this Request.**

16.    There are more than 1,000 phone numbers in the following set.

All persons nationwide who defendant Dun & Bradstreet, Inc. or some person on its behalf called on their cell phone using a device that has the capacity to dial numbers without human intervention, where the phone number called was obtained from some source other than directly from the called party, where any call was made between and including a date two years prior to the filing of this action, ongoing.

**Response:  Convergys objects to the use of the vague, ambiguous, and undefined phrase "without human intervention." Subject to and without waiving these objections, after reasonable inquiry, the information known by or readily available to Convergys is insufficient to enable it to admit or deny this Request.**

17.    There are more than 1,000 phone numbers in the following set:

All persons nationwide who Convergys Customer Management Group, Inc. or some person on its behalf called on their cell phone using a device that has the capacity to dial numbers without human intervention, where the phone number called was obtained from some source other than directly from the called party, where any call was made between and including a date two years prior to the filing of this action, ongoing.

**Response:   Convergys objects to the use of the vague, ambiguous, and undefined phrase "without human intervention." Subject to and without waiving these objections, after reasonable inquiry, the information known by or readily available to Convergys is insufficient to enable it to admit or deny this Request.**

## RESPONSES TO INTERROGATORIES

1.  Identify all automated calls (including attempted calls) for each of the phone number in the class described below, including plaintiff. A complete answer will include at least the following:

   a.  Identifying information for the person you were trying to reach (e.g. name, business name, address, email, fax number, all phone numbers),

   b.  Information for the calls themselves, including the phone number called, the date and time of the call and the result of the call (e.g. no answer, message left, spoke with John Doe and updated business data, etc.), and whom you spoke with, if anyone, and the substance of the conversation;

   c.  Information regarding the dialer and equipment used, including identification of the equipment and software used to make the call (e.g. Guaranteed Contacts, Aspect, Avaya), the location for call origination/dialer; and

   d.  Identify the source(s) where you obtained the telephone number called and the facts and circumstances surrounding such.

"All cell phone numbers nationwide who you or some person on your behalf called on using a device that has the capacity to dial numbers without human intervention, where defendant obtained the phone number from some source other than directly from the called party, where any call was made between and including a date two years prior to the filing of this action, ongoing."

**Response:  Convergys objects to this Interrogatory as overly broad, unduly burdensome, vague, ambiguous, and as seeking information that is neither relevant to the parties' claims or defense nor likely to lead to the discovery of admissible evidence. Convergys objects to the use of the vague, ambiguous, and undefined phrase "without human intervention." Convergys objects to the use of the vague, ambiguous, and undefined phrases "directly from the called party" and "automated calls (including**

attempted calls)." Subject to and without waiving its objections, Convergys states that it is unable to answer this Interrogatory as propounded.

Convergys, on behalf of D&B, makes telephone calls to update the information contained in D&B's databases. To make the calls on behalf of D&B, Convergys has access to only limited information, and Convergys obtains this limited information using an interface called "salesforce.com." D&B maintains "salesforce.com," and D&B decides what information Convergys will have access to through "salesforce.com" when making calls on behalf of D&B.

One of the items of information in "salesforce.com" to which Convergys has access is the telephone number which Convergys will call on behalf of D&B. Convergys does not have access to information revealing the source of the telephone numbers contained in "salesforce.com," and Convergys does not have any information about previous communications or interactions between D&B and the people/entities that Convergys calls on behalf of D&B.

Under Rule 33(d), and in response to Request for Production No. 1 below, Convergys will produce certain business records which may be responsive to this Interrogatory. Convergys will also produce copies of redacted screen captures from "salesforce.com" which show the fields/categories of information that Convergys has access to when it makes telephone calls on behalf of D&B.

After reviewing D&B's responses to Plaintiff's Requests, including this Interrogatory, Convergys will supplement its response to this Interrogatory accordingly.

Investigation continues.

2.      For each person and call responsive to the previous interrogatory you contend you had prior express consent to call, identify all documents, data, materials, testimony and other things that support such contention, and explain how application of law to those facts suggests that prior express consent was present.

Response:   Convergys incorporates as if fully restated its objections and response to Interrogatory No. 1.

Responding further, Convergys states that it is unable to answer this Interrogatory as propounded. As explained in response to Interrogatory No. 1., due to the business relationship between Convergys and D&B, D&B would have information or documents demonstrating any prior express consent provided by Plaintiff or any other person or entity.

After reviewing D&B's responses to Plaintiff's Requests, including this Interrogatory, Convergys will supplement its response to this Interrogatory accordingly.

Investigation continues.

3.      Identify all documents, data materials testimony or other things that you have possession, custody or control over, AND those that are not in your possession, custody or control but which you are aware of, that support or refute any defense you claim applies to any person responsive to interrogatory 1.

Response:   Convergys incorporates as if fully restated its objections and response to Interrogatories Nos. 1 and 2.

12

**Responding further, Convergys states that it is unable to answer this Interrogatory as propounded. As explained in response to Interrogatories Nos. 1 and 2, due to the business relationship between Convergys and D&B, D&B would have information or documents potentially supporting any person or entity-specific defense.**

**After reviewing D&B's responses to Plaintiff's Requests, including this Interrogatory, Convergys will supplement its response to this Interrogatory accordingly.**

**Investigation continues.**

4.     Identify all of your dialers. Include the make, model, physical location, how they are used, and whether they were used to call plaintiff or any other person responsive to interrogatory 1.

**Response:   Convergys objects to this Interrogatory as overly broad, unduly burdensome, and as not limited in scope to reasonably relate to the material allegations in this lawsuit or reasonably calculated to lead to the discovery of admissible evidence to the extent that it calls for information about Convergys's dialers which were not used to make calls on behalf of D&B in order to update information in "salesforce.com."**

**Subject to and without waiving its objections, when making calls on behalf of D&B to update "salesforce.com" records, Convergys uses an Avaya Dialer (CDCAPD001, Release 4.2, Production Dialer). The primary hardware and software associated with this Avaya dialer is located in Convergys's corporate headquarters, in Cincinnati, OH. Convergys used**

this Avaya dialer in connection with its call—on behalf of D&B—to phone

number 630-███ 3271 on January 10, 2012.

5.      If you contend that an "automatic telephone dialing system" was not used to call any class member (including plaintiff), identify all documents, data, testimony and other things that support or refute this contention (whether in your possession, custody or control or not), and explain application of law to fact as to how they might support the contention.

**Response:   Convergys objects to this Interrogatory to the extent that it calls for information about "any class members" as unduly burdensome and not readily susceptible to response as Convergys cannot identify the "class" as defined by Plaintiff. Convergys objects to Plaintiff's use of the undefined phrase "automatic telephone dialing system."**

**Subject to and without waiving its response, Convergys does not contend that it did not use an "automatic telephone dialing system," as defined in 47 U.S.C. § 227(a)(1) and 47 C.F.R. § 64.1200(f)(1), to call—on behalf of D&B—the phone number 630-███ 3271 on January 10, 2012.**

6.      Identify all categories and sources of Electronically Stored Information, including backups and other difficult to obtain categories, relating to plaintiffs and the class members.

Include all relevant information, including at least: a description of the substance of the data, physical location, format, accessibility, person who is responsible for such data (or who has personal knowledge regarding the data) and bates number, if any. If the data has not been produced, explain why.

**Response:   Convergys objects to this Interrogatory as unduly burdensome, overly broad, and as seeking information that is neither relevant to the parties' claims or defenses nor likely to lead to the discovery of admissible evidence. Convergys objects to this Interrogatory**

to the extent that it calls for information about "class members" as unduly burdensome and not readily susceptible to response as Convergys cannot identify the "class" as defined by Plaintiff.

Subject to and without waiving its objections, Convergys has access to the "salesforce.com" information relating to its call—on behalf of D&B—to phone number 630-███3271 on January 10, 2012.

Under Rule 33(d), and in response to Request for Production No. 1 below, Convergys will produce business records which may be responsive to this Interrogatory.

Investigation continues.

7. Identify every claim you are aware of that you used an automatic telephone dialing system as defined in the TCPA, implementing regulations and orders. Include, for example, formal and informal claims including demand letters, threatening emails and letters, regulatory complaints with the FCC or FTC, and lawsuits, including particularly class actions. Include citation to bates numbers. (See document request 9).

Response: Convergys objects to the use of the vague, ambiguous, and undefined term "claim." Subject to and without waiving its objections, Plaintiff's lawsuit is the only instance of which Convergys is aware that a person or entity has accused Convergys of violating 47 U.S.C. § 227(b)(1)(A) or 47 C.F.R. § 64.1200(a)(1).

8. With respect to each expert, retained or nonretained, whom you will or may call upon to give evidence or testimony in connection with this case, please state: (a) his name, address, telephone number, occupation, and current employment; (b) the subject matter of his expertise; (c) his educational background, academic degrees, employment history, employment experience, and any other matters which you contend qualify him as an expert; (d) the substance of all facts and opinions to which he could testify if called as a witness; (e) a summary of the grounds for each such opinion.

**Response:  Convergys objects to this Interrogatory as premature as Convergys has not yet determined which expert or experts it will or may call upon to give evidence or testimony in connection with this case. Convergys will provide the expert disclosures required by the Federal Rules of Civil Procedure in accordance with any scheduled entered by the Court in this lawsuit. Convergys objects to this Interrogatory to the extent that it calls for production beyond that required by the Federal Rules of Civil Procedure.**

## RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

1.     All documents, records, data, recordings and other materials relating to plaintiff or 630-███ 3271, or which are indexed, filed or retrievable under any of them, or any number, symbol, designation or code (such as an account number or Social Security number) associated with any of them.

**Response:   Subject to and without waiving its objections, Convergys will produce screen captures from "salesforce.com" relating to its call—on behalf of D&B—to phone number 630-███ 3271 on January 10, 2012.**

**Investigation continues.**

2.     All documents that concern or relate to any person or phone number responsive to interrogatory 1.

**Response:   Convergys incorporates its responses and objections to Interrogatories 1, 2, and 3 as if fully restated herein.**

**Subject to and without waiving its objections, Convergys states that it is unable to answer this Request as propounded. As explained in response to Plaintiff's Interrogatories, Convergys is unable to identify the "class" as defined by Plaintiff. Due to the business relationship between Convergys and D&B, D&B would have information or documents which may be used to identify the putative class, to the extent that such identification is possible or that such documents exist.**

**After reviewing D&B's responses to Plaintiff's Requests, including this Request, Convergys will supplement its response to this Request accordingly.**

**Investigation continues.**

3.    All documents referenced or referred to in your response to any interrogatory, including but not limited to interrogatory 1.

**Response:   Convergys incorporates its responses and objections to Plaintiff's Interrogatories as if fully stated herein.**

**Subject to and without waiving its objections, Convergys will produce documents which Convergys offered to produce in response to any Interrogatory.**

4.    All documents that describe your dialers (e.g. manuals, training materials, emails, instructional videos, intranet how-to) or relate to whether they have the capacity to dial numbers without human intervention.

**Response:   Convergys objects to this Request as overly broad, unduly burdensome, and as not limited in scope to reasonably relate to the material allegations in this lawsuit or reasonably calculated to lead to the discovery of admissible evidence to the extent that it calls for information about Convergys's dialers which were not used to make calls on behalf of D&B in order to update information in "salesforce.com."**

**Subject to and without waiving its objections, Convergys will produce the following documents relating to its Avaya Dialer (CDCAPD001, Release 4.2, Production Dialer) identified in response to Interrogatory No. 4:**

- **Avaya, "Using Avaya Proactive Contact Supervisor," Release 4.2 (May 2010)**
- **Avaya, "Avaya Proactive Contact - Answer Machine Detection and SIT Screening"**

**Investigation continues.**

5.    All documents that support or refute any affirmative defense in this case or relating to prior express consent to receive calls made with an automatic telephone dialing system or prerecorded or artificial voice, for each class member including plaintiffs.

**Response:   Convergys incorporates its responses and objections to Interrogatories 1, 2, and 3 as if fully restated herein.**

**Subject to and without waiving its objections, Convergys states that it is unable to answer this Request as propounded. As explained in response to Plaintiff's Interrogatories, Convergys is unable to identify the "class" as defined by Plaintiff. Due to the business relationship between Convergys and D&B, D&B would have information or documents which may be responsive to this Request, if any.**

**After reviewing D&B's responses to Plaintiff's Requests, including this Request, Convergys will supplement its response to this Request accordingly.**

**Investigation continues.**

6.    All documents, data or other materials you reviewed or referenced in responding to any discovery request in this case.

**Response:   Convergys objects to this Request as vague and ambiguous and not reasonably susceptible to response. Convergys also objects to this Request to the extent that it seeks production of documents or information to which Convergys has asserted an objection to producing. Subject to and without waiving its objections, to the extent that Convergys has offered to produce documents in response to one of Plaintiff's**

**Requests, Convergys will also produce the identified documents in response to this Request.**

7.     A copy of any sworn testimony relating to your dialers, or policies, practices or procedures relating to the use of dialers. A full response would include, for example, deposition testimony, declarations and affidavits.

**Response:   Convergys objects to this Request as overly broad, unduly burdensome, and as not limited in scope to reasonably relate to the material allegations in this lawsuit or reasonably calculated to lead to the discovery of admissible evidence to the extent that it calls for information about Convergys's dialers which were not used to make calls on behalf of D&B in order to update information in "salesforce.com."**

**Subject to and without waiving its objections, as it is presently informed, Convergys is not aware of any documents responsive to this Request.**

**Investigation continues.**

8.     All agreements between the parties that concern the use of a dialer.

**Response:   Convergys objects to this Interrogatory as overly broad, unduly burdensome, and as not limited in scope to reasonably relate to the material allegations in this lawsuit or reasonably calculated to lead to the discovery of admissible evidence to the extent that it calls for information about agreements between Convergys and D&B which do not relate to Convergys's activities to update information in "salesforce.com." Convergys objects to the vague, ambiguous, and undefined phrase "concern the use of a dialer."**

**Subject to and without waiving its objections, Convergys will produce copies of the following documents:**

- **Lead Management Services Agreement by and between Convergys and D&B (April 28, 2010)**
- **Statement of Work Number 1 by and between Convergys and D&B (January 1, 2011)**
- **Business Process Outsourcing Services Agreement by and between Convergys and D&B (August 25, 2010)**

**Investigation continues.**

9.     All documents concerning every claim you are aware of that you used an automatic telephone dialing system as defined in the TCPA, implementing regulations and orders. Include, for example, formal and informal claims including demand letters, threatening emails and letters, regulatory complaints with the FCC or FTC, and lawsuits, including particularly class actions.

**Response:   Convergys objects to the use of the vague, ambiguous, and undefined term "claim." Subject to and without waiving its objections, as it is presently informed, Convergys is not aware of any documents responsive to this Request.**

**Investigation continues.**

10.     All insurance policies that could possibly afford any coverage with respect to the matters complained of in this case together with all correspondence discussing, accepting or declining coverage or reserving rights with respect thereto.

**Response:   Convergys objects to this Request as calling for a legal conclusion. Subject to and without waiving its objections, Convergys will produce a copy of the following insurance policies which may be responsive to this Request:**

- **Primary Policy entitled "Technology, Media & Professional Liability Insurance" issued by Beazley Group (policy number QK1102774)**

- **First Excess Policy issued by Continental Casualty Company (policy number 169902255-09)**
- **Second Excess Policy issued by Chartis Specialty Insurance Company (policy number 02-842-61-39)**
- **Third Excess Policy issued by Aspen Insurance UK Limited (policy number QK1103547)**
- **Fourth Excess Policy issued by RLI Insurance Company (policy number EPG0009820)**
- **Fifth Excess Policy issued by Lexington Insurance Company (policy number 015438182)**
- **Sixth Excess Policy issued by ACE American Insurance Company (policy number XEO G24456389 005)**

**Investigation continues.**

11.    All documents received from third parties that relate to this case, without regard to time. Responsive materials would include, for example, responses to subpoenas.

**Response:   As it is presently informed, Convergys is not aware of any documents responsive to this Request.**

**Investigation continues.**

Date: April 5, 2012                      Respectfully submitted,

**CONVERGYS CUSTOMER
MANAGEMENT GROUP INC.**

By:      /s/ Albert E. Hartmann
         One of Its Attorneys

Perrie M. Weiner (admitted *pro hac vice*)
Joshua Briones (admitted *pro hac vice*)
DLA PIPER LLP (US)
2000 Avenue of the Stars, Suite 400 North Tower
Los Angeles, California 90067-4704
T: 310.595.3000
F: 310.595.3300
Email: perrie.weiner@dlapiper.com
Email: joshua.briones@dlapiper.com

Albert E. Hartmann (ARDC # 06256064)
DLA PIPER LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601
T: 312.368.2142
F: 312.630.7317
Email: albert.hartmann@dlapiper.com

## VERIFICATION

Nicholas Schauder, pursuant to 28 U.S.C. § 1746, states as follows:

1.     I am an Account Manager for Convergys Corp., and I am authorized to verify the foregoing responses to Plaintiff's Interrogatories on behalf of Convergys Customer Management Group Inc.

2.     The information set forth in the answers was gathered and collected by persons in the employ of, or retained by, Convergys Customer Management Group Inc. from records and files kept by Convergys Customer Management Group Inc. in the ordinary course of its business.

3.     I am informed and believe that the answers truly and accurately reflect said records, files and information, and accordingly am informed and believe that said answers are true and accurate.

I declare under penalty of perjury that the foregoing is true and correct

Nicholas Schauder

## CERTIFICATE OF SERVICE

I, Albert E. Hartmann, an attorney, hereby certify that on April 5, 2012, I caused a copy of the above and foregoing to be served upon:

Alexander H. Burke
Burke Law Offices, LLC
155 N. Michigan Avenue
Suite 9020
Chicago, IL 60601
ABurke@BurkeLawLLC.com

Counsel for Plaintiff

Bart T. Murphy
Ice Miller LLP
2300 Cabot Drive
Suite 455
Lisle, IL 60532
Bart.Murphy@icemiller.com

Counsel for Defendant Dun & Bradstreet, Inc.

by email delivery and by addressing and mailing a copy of same, via U.S. Mail, postage prepaid, to said counsel, from 203 N. LaSalle St., Chicago, Illinois 60601.

s/ Albert E. Hartmann
Albert E. Hartmann

WEST\229625373.5

# Exhibit G

Transcript of Proceedings at initial status conference
March 13, 2012

1    TRANSCRIBED FROM DIGITAL RECORDING

2                   IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
3                        EASTERN DIVISION

4    NICHOLAS MARTIN, on behalf of    )  Docket No. 12 C 215
     himself and others similarly     )
5    situated,                        )
                                      )
6                       Plaintiff,    )
                                      )
7            v.                       )  Chicago, Illinois
                                      )  March 13, 2012
8    DUN & BRADSTREET, INC., and      )  10:27 o'clock a.m.
     CONVERGYS CUSTOMER MANAGEMENT    )
9    GROUP, INC.,                     )
                                      )
10                      Defendants.   )

11              TRANSCRIPT OF PROCEEDINGS - STATUS
              BEFORE THE HONORABLE MORTON DENLOW
12
     APPEARANCES:
13
     For the Plaintiff:            BURKE LAW OFFICES, LLC., by
14                                 MR. ALEXANDER HOLMES BURKE
                                   155 North Michigan Avenue
15                                 Suite 9020
                                   Chicago, Illinois 60601
16
     For Defendant Dun &:          ICE MILLER LLP, by
17   Bradstreet:                   MR. ISAAC J. COLUNGA
                                   2300 Cabot Drive
18                                 Suite 455
                                   Lisle, Illinois 60532
19

20                      ALEXANDRA ROTH, CSR, RPR
                        Official Court Reporter
21                      219 South Dearborn Street
                            Room 1224
22                      Chicago, Illinois 60604
                          (312) 408-5038
23

24   NOTE:  Please notify of correct speaker identification.
     FAILURE TO SPEAK DIRECTLY INTO THE MICROPHONE MAKES
25   PORTIONS INAUDIBLE.

2

1   APPEARANCES:   (Continued)

2   For Defendant Convergys:        DLA PIPER US LLP IL, by
                                    MR. ALBERT EDWARD HARTMANN
3                                   203 North LaSalle Street
                                    20th Floor
4                                   Chicago, Illinois 60601

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    (Proceedings had in open court:)

2         THE CLERK:  12 C 215, Martin versus Dun & Bradstreet.

3         MR. BURKE:  Good morning, Judge.  Alexander Burke,

4    B-u-r-k-e, for the plaintiff.

5         MR. COLUNGA:  Good morning, your Honor.  Isaac

6    Colunga, C-o-l-u-n-g-a, on behalf of the defendant Dun &

7    Bradstreet.

8         MR. HARTMANN:  Good morning, your Honor.  Albert

9    Hartmann, H-a-r-t-m-a-n-n, on behalf of the defendant

10   Convergys.

11        THE COURT:  Okay.  I see Mr. Burke has filed a motion

12   to certify the class.  So what do you need to do before you are

13   ready to proceed with that motion?

14        MR. BURKE:  I would need some class discovery.  I've

15   already issued some very limited discovery requests.  I think I

16   have passed eight interrogatories and something like 12

17   document requests, some -- and some requests for admission.

18        I would hope to maybe file a memorandum in support of

19   that motion in, say, 60 days.

20        THE COURT:  Okay.  And what would you need to do in

21   opposition to the motion, in the way of discovery?  I mean, I'm

22   going to focus on that aspect of it first.  Either we're going

23   to have a class action or we're not going to have a class

24   action.

25        MR. COLUNGA:  Your Honor, I think there -- there is

4

```
 1   two issues.  And I'll let counsel take over with respect to one
 2   of them.  But one of them, what we see is, in a case like this,
 3   there is an awful lot of electronically stored information
 4   discovery that pertains to that.  And we're in the process
 5   right now of obtaining as much as we can.  We still have to
 6   review it.  We have to organize it and then produce it.
 7            I do feel that 60 days might be cutting it a little
 8   short.  However, there is -- there is an issue with respect to
 9   bifurcation.  And I think counsel can speak to that as well
10   that might -- might help expedite things.
11            MR. HARTMANN:  Yes, your Honor.  In the status report,
12   we were thinking -- the defendants were thinking along the
13   lines that you were -- we focused on the class issues.
14   Initially do discovery on the elements that Mr. Burke will need
15   to certify a class, unless the defendants concede that, say,
16   for example, numerosity.  Focus that, get the class
17   certification resolved.  And then if there is any merits based
18   discovery left, do that at the end.  But also conceding that
19   after discussing with Mr. Burke in a Rule 26(f) conference, if
20   the defendants are going to have to serve defenses such as
21   consent, we would have to provide discovery on that in --
22            THE COURT:  All right.
23            MR. HARTMANN:  -- 60 days --
24            THE COURT:  The consent issue really requires you to
25   look at each particular customer?  Is that what it involves?
```

1          MR. HARTMANN:  Yes, your Honor.

2          MR. COLUNGA:  That's right, your Honor.  We're still

3   identifying, you know, the numbers, the precise numbers, and

4   the customers themselves.  We also still need to identify the

5   communication that they allegedly received.  Or I'm sorry, the

6   call.

7          MR. BURKE:  Judge, this is not like some other auto-

8   dialer cases, like the ones against debt collection agencies.

9   I mean, the plaintiff has no relationship with Dun & Bradstreet

10  or Convergys.  They obtained this phone number from some

11  source.  I don't know where they got it.  But it seems hard to

12  imagine that there is consent here.

13         THE COURT:  What -- what was the nature of the call

14  itself?

15         MR. BURKE:  It was a call that was made in order to

16  build Dun & Bradstreet's database, as far as we can tell.

17         THE COURT:  To build --

18         MR. BURKE:  Dun & Bradstreet is like a company that

19  provides sort of credit reports for businesses.

20         THE COURT:  Right.

21         MR. BURKE:  And so they were trying to learn about my

22  client's business when they made this phone call.  Convergys is

23  a company that Dun & Bradstreet hired to build its database.

24         During the phone call, the operator told my client

25  that they used an autodialer.  And really the autodialer issue

1    is -- as I see it, that's the only merits issue here.  I don't

2    think that it's going to be a messy issue.

3              Typically in this kind of case the only thing I need

4    to do in order to prove that they used an autodialer under the

5    TCPA is ask a few questions in a deposition.  Sometimes I even

6    get --

7              THE COURT:  Right.

8              MR. BURKE:  -- interrogatory.

9              THE COURT:  You can do it through an interrogatory

10   request to admit.  I mean --

11             MR. BURKE:  Although they usually deny the request for

12   admission even though I tried to carefully craft them.  So, you

13   know, and I understand --

14             THE COURT:  Are you getting -- are you getting better

15   at crafting them?

16             MR. BURKE:  I'm trying, Judge.  I think that I've

17   gotten better, especially in my interrogatories.  They're very

18   pointed.  And, you know, for a very large case, you know, I'm

19   not sure I'm going to need any more interrogatories than the

20   nine or so that I've issued.

21             THE COURT:  Mr. Burke is getting good at this stuff.

22   He's got his own law firm now.  I mean, I knew him when he was

23   just at Edelman & Combs, just young associate getting --

24   getting his feet wet here.

25             MR. BURKE:  It was good experience, Judge.  You know,

1     I'm having a good time with this autodialer stuff.

2          You know, the plaintiff opposes bifurcation.  You

3     know, the -- the liability issue that defendants are referring

4     to, I think, is just this whether they were using an auto-

5     dialer.  I think that that -- that issue meshes with the class

6     issues because I'm going to have to prove that everyone used --

7          THE COURT:  And --

8          MR. BURKE:  -- the same dialer.

9          THE COURT:  -- also meshes with the issue whether

10    you're going to settle the thing or not settle the thing.  So

11    as long as a discovery is somewhat limited in scope, as Mr.

12    Burke has described, as it relates to merits, I'm not going to

13    bifurcate the discovery.  You can go ahead and do both class

14    and merits.  And, you know, I want to keep -- keep the class

15    discovery moving forward.

16          So let me see you in about 60 days.

17          MR. COLUNGA:  If -- perhaps, your Honor, if we can set

18    a status in 60 days.  But I do feel that we may need more time

19    to that too --

20          THE COURT:  Well, I'll find out.  I mean, you know,

21    I'm looking for you to be working closely together to move it

22    forward.  But let me see you on a status in 60 days.

23          I mean, you know, what -- what I think sometimes is

24    helpful is to just take examples of -- I mean, yes, I mean,

25    while you may want the entire discovery, just pulling out

 1    representative situations and seeing whether they -- they work

 2    for you is also helpful.  So you may have a period of time that

 3    you asked for, two years back.

 4              MR. BURKE:  Right, it's two years.

 5              THE COURT:  So, I mean, if you can give him on a

 6    rolling basis a couple of months and let him analyze it, he's

 7    going to tell you whether he's got a case or doesn't have a

 8    case, if they're representative.  So you take one month from

 9    the first year, one month from the second year, and something

10    along those lines.

11              MR. BURKE:  I -- I think that's something we can work

12    out.  I mean, you know, the way I've defined the class is, it

13    does not include anyone who gave their phone number to either

14    defendant.  And giving your phone number is consent.  And I'm

15    not aware of any other action or inaction that can constitute

16    consent.

17              So from my perspective, there should be no one in the

18    class who consented.

19              MR. COLUNGA:  Beyond consent, there may be individuals

20    in the class as it's currently defined, I believe, who -- where

21    the phone call did not go to a cell phone.  And we still need

22    to confirm that.  Whether --

23              THE COURT:  That's why I'm saying, you know, spend

24    some time just, you know, breaking out a month from each year

25    quickly.  Get it to Mr. Burke.  Let him analyze it.  See where

1   you're going with the thing.  And then he'll realize whether or

2   not you're going to have defenses or whether he's got a slam

3   dunk.

4          MR. COLUNGA:  That's right, your Honor.  And I should

5   say, your Honor, we are working well together.  This is -- this

6   might be a little quibble before you.  But we -- we can work

7   this out.

8          MR. BURKE:  You know, one other thing, Judge, that may

9   be worth mentioning is that I recall that one of the

10  affirmative defenses had to do with releases for some of the

11  class members as to other cases.  And I'm not aware of any

12  other cases that this -- that might relate to this case.  And I

13  think I issued discovery about this.

14         Am I thinking of the wrong case?

15         MR. HARTMANN:  No, that -- that was actually my -- it

16  was more preemptive.  Just it -- I'm not aware of any other

17  cases specifically.  But to the extent there is something out

18  there, I wanted to --

19         THE COURT:  So why don't we see you in 60 days.  And I

20  want progress made both on, you know, the class certification

21  issue and -- and the merits issue.  Let's see where we stand.

22         THE CLERK:  May 15, 10:00 a.m.

23         MR. BURKE:  Great.  Thank you.

24         THE COURT:  Thank you.  Thank you all.

25         MR. COLUNGA:  Your Honor, I apologize, we also have a

1    status report that we had issued, the plaintiff had filed, with

2    respect to the several -- the dates.

3            MR. BURKE:  I suggested October 15 as the discovery

4    cutoff.  And maybe we should just talk about that in May.

5            THE COURT:  Yeah, let's talk about it in May.  See, I

6    mean, you'll have a better handle on to see whether you have

7    the difficulties you anticipate or not.

8            MR. BURKE:  Okay.

9            THE COURT:  Okay?

10           MR. COLUNGA:  Thank you, your Honor.

11           MR. HARTMANN:  Thank you.

12           THE COURT:  Thank you.

13       (Which were all the proceedings had at the hearing of the

14         within cause on the day and date hereof.)

15                              CERTIFICATE

16           I HEREBY CERTIFY that the foregoing is a true, correct

17   and complete transcript of the proceedings had at the hearing

18   of the aforementioned cause on the day and date hereof.

19

20   /s/Alexandra Roth                              8/30/2012

21   _____         _____
     Official Court Reporter                        Date
     U.S. District Court

22   Northern District of Illinois
     Eastern Division

23

24

25

# Exhibit H

Transcript of Proceedings at Plaintiff's Motion to Compel
July 9, 2012

```
 1    TRANSCRIBED FROM DIGITAL RECORDING

 2              IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS
 3                    EASTERN DIVISION

 4    NICHOLAS MARTIN, on behalf of    )  Docket No. 12 C 215
      himself and others similarly     )
 5    situated,                        )
                                       )
 6                      Plaintiff,     )
                                       )
 7            v.                       )  Chicago, Illinois
                                       )  July 9, 2012
 8    DUN & BRADSTREET, INC., and      )  9:21 o'clock a.m.
      CONVERGYS CUSTOMER MANAGEMENT    )
 9    GROUP, INC.,                     )
                                       )
10                      Defendants.    )

11              TRANSCRIPT OF PROCEEDINGS - STATUS
              BEFORE THE HONORABLE MORTON DENLOW
12
      APPEARANCES:
13
      For the Plaintiff:          BURKE LAW OFFICES, LLC., by
14                                MR. ALEXANDER HOLMES BURKE
                                  155 North Michigan Avenue
15                                Suite 9020
                                  Chicago, Illinois 60601
16
      For Defendant Dun &:        ICE MILLER LLP, by
17    Bradstreet:                 MR. ISAAC J. COLUNGA
                                  2300 Cabot Drive
18                                Suite 455
                                  Lisle, Illinois 60532
19

20                  ALEXANDRA ROTH, CSR, RPR
                     Official Court Reporter
21                  219 South Dearborn Street
                          Room 1224
22                  Chicago, Illinois 60604
                        (312) 408-5038
23

24    NOTE:  Please notify of correct speaker identification.
      FAILURE TO SPEAK DIRECTLY INTO THE MICROPHONE MAKES
25    PORTIONS INAUDIBLE.
```

2

1    APPEARANCES:   (Continued)

2    For Defendant Convergys:        DLA PIPER US LLP IL, by
                                     MR. ALBERT EDWARD HARTMANN
3                                    203 North LaSalle Street
                                     20th Floor
4                                    Chicago, Illinois 60601

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

```
 1          (Proceedings had in open court:)

 2              THE CLERK:  12 C 215, Martin versus Dun & Bradstreet,

 3   Inc.

 4              MR. BURKE:  Good morning, Judge.  Alexander Burke for

 5   the plaintiff.

 6              THE COURT:  Go ahead and spell your last name for the

 7   record.

 8              MR. BURKE:  B-u-r-k-e.

 9              MR. HARTMANN:  Good morning, your Honor.  Albert

10   Hartmann, H-a-r-t-m-a-n-n, for defendant Convergys.

11              MR. BURKE:  Judge, counsel for Dun & Bradstreet, which

12   is the subject of this motion, isn't here yet.  I just was

13   looking on my phone.  I don't have his cell phone number.

14              Perhaps we should pass -- pass it for a few minutes

15   and try to give him a call.

16              THE COURT:  Okay.

17              MR. HARTMANN:  I -- I may have an e-mail he sent me.

18              THE COURT:  So why don't you try.

19              MR. HARTMANN:  Thank you.

20              THE COURT:  See what you can do.

21          (Other matter heard before this Court, after which the

22           following further proceedings were had herein:)

23              THE CLERK:  12 C 215, Martin versus Dun & Bradstreet,

24   Inc.

25              MR. BURKE:  Good morning, Judge.  Alexander Burke,
```

1    B-u-r-k-e, for the plaintiff.

2          MR. HARTMANN:  Good morning, your Honor.  Albert

3    Hartmann, H-a-r-t-m-a-n-n, for defendant Convergys.

4          MR. COLUNGA:  Good morning, your Honor.  Isaac

5    Colunga, on behalf of the defendant Dun & Bradstreet.

6          Your Honor, I apologize for running late this morning.

7    It was in my calendar for 10:00 a.m.  I apologize to the Court

8    and to counsel as well.

9          THE COURT:  Okay.  So where do things stand?

10          MR. COLUNGA:  Your Honor, plaintiff -- we spoke --

11    plaintiff's counsel and Dun & Bradstreet spoke a few weeks ago

12    with respect to where Dun & Bradstreet was with producing the

13    documents that plaintiff had requested.  I understand that

14    plaintiff needed to file this motion to compel since there

15    were -- the Court has yet to set any discovery deadlines.  I

16    think what -- what plaintiff is requesting is some deadlines so

17    that we can have some clarity and get -- have a little bit more

18    focus with respect to what the defendants need to produce.

19          I think I explained to the Court the last time we were

20    here that we have a lot of information that we're sifting

21    through.  And the defendant is attempting to comply with.  You

22    know, the interrogatory the plaintiff produced to us requires a

23    little bit more than just dumping a pile of documents on the

24    plaintiff.

25          We are going through the documents deliberately.  We

5

```
 1    are looking at them for not only where the cell phone numbers
 2    came from.  But if you recall, Judge, this is a TCPA case
 3    involving the -- allegedly involving calls made to cell phone
 4    numbers.  So we're looking at not only cell phone numbers, but
 5    we're also looking to whether there was consent to call those
 6    numbers.  That's part of plaintiff's class definition, and
 7    that's part of the plaintiff's request with respect to the
 8    documents that we produced.
 9              And it's -- it's taking a lot of time, unfortunately.
10    And -- and that's -- that's where we are.
11              THE COURT:  But that doesn't answer the question.  I
12    mean, you know, Mr. Burke has asked for a date certain by which
13    you are going to give him an answer.  So what's -- you know,
14    can you give him a date certain by which you're going to
15    respond to the discovery?
16              I appreciate it's taking a lot of time.  I mean, it
17    would be different if you told me, okay, Judge, we're engaged
18    in rolling discovery.  So as I go through things, I'm passing
19    it on to Mr. Burke.  I didn't hear that.
20              MR. COLUNGA:  That's correct, we -- we have not.
21    Convergys has made a production of documents, but Dun &
22    Bradstreet has not produced yet either rolling or in one lump.
23              We're not -- we are amenable to that -- to that kind
24    of arrangement.  I think that there are documents that we can
25    probably produce right now to Mr. Burke, not necessarily with
```

6

1    respect to the phone numbers or consent, but I believe Mr.

2    Burke is requesting insurance policies.  We may have copies of

3    those documents that we can produce and a few other documents

4    that he's requested.

5         But so with respect to dates, that's what we're

6    getting at.  I think --

7         THE COURT:  Well, here is what we're getting at.  What

8    we're getting at is, when a party issues discovery to another

9    party and the other party doesn't respond, a party shouldn't

10   have to go in on a motion to find out what's going on.  That's

11   what we're getting at.  Okay?

12        So Mr. Burke is entitled to know what's going on, when

13   he's going to get something.  I found Mr. Burke to be not

14   unreasonable if he knows that things are happening.  But if he

15   gets nothing and no responses, it doesn't work.

16        MR. COLUNGA:  You're right, Judge.  But I think in

17   this situation, we -- we have been in touch.  We have been

18   communicating.  Mr. Burke -- Mr. Burke, as you said, has been

19   very reasonable.  I -- I've made these explanations along the

20   way.

21        But what Mr. Burke wanted, and I understand, is -- is

22   a date, a date certain that we perhaps give him something with

23   respect to the production.  And when we last spoke, I was

24   unable to do that.  And that's what prompted the motion to

25   compel.

```
 1              Tomorrow, I have a very focused call with the client.
 2   And I believe, I am confident, that after this phone call I can
 3   give Mr. Burke a date certain, the date that he's looking for.
 4   If we can, if the Court is open to this, I would request just a
 5   short date, perhaps a deadline, so that I -- perhaps I can talk
 6   to Mr. Burke.  And we can come up with a schedule of dates
 7   that -- that we -- we can comply with.
 8              THE COURT:  Well, what -- what's outstanding?  What's
 9   outstanding?  There is a document request?
10              MR. BURKE:  All documents are outstanding.  All -- all
11   interrogatory responses essentially are outstanding.  We've got
12   some -- some, you know, objections and we've got some, you
13   know, placeholder objections and very little substantive
14   responses to our interrogatories.
15              We've got nothing as to, you know, consent as to the
16   plaintiff.  I don't have any documents having to do with my
17   guy.  Essentially --
18              THE COURT:  That's usually an important issue --
19              MR. COLUNGA:  It is.
20              THE COURT:  -- you know, with respect to the
21   plaintiffs.  You know, efforts should be being made to deal
22   with that specifically.
23              You know, I'm going to help focus the discussion with
24   your client tomorrow; and that is, all outstanding discovery is
25   to respond -- to be responded to on or before August 15, unless
```

1    otherwise agreed to by plaintiff's counsel.  So the plaintiff's

2    motion to compel is granted.  All outstanding discovery by

3    defendant Dun & Bradstreet, Inc., is to be complied with by,

4    you know, August 15, unless otherwise agreed to by plaintiff's

5    counsel.

6          So I want to -- you know, I don't know what else to

7    do.

8          MR. COLUNGA:  I -- I understand, Judge.

9          THE COURT:  Do we have another date in the case,

10   another status date?

11         MR. HARTMANN:  I believe we have an August date.

12         THE COURT:  Let me just check here.  Yeah, we got a

13   status on August 7.  So why don't we -- why don't we continue

14   that status date to let's say August -- August 16, the day

15   after the --

16         MR. BURKE:  Judge, could I -- could I ask for perhaps

17   like the 21st?

18         THE COURT:  If you are on vacation.

19         MR. BURKE:  I am.  I'm scheduled to be in Wisconsin.

20         THE COURT:  Okay.  We will let you go on vacation.

21         THE CLERK:  You won't be here, Judge.

22         THE COURT:  Okay.  I'll be on vacation.  Okay.

23         Linda, when am I back?

24         THE CLERK:  The 21st or the 23rd.

25         THE COURT:  The 21st or 23rd, is that okay?  Will you

1    be back, Mr. Burke?

2                    MR. BURKE:  Yes.

3                    THE COURT:  Does that work for the other attorneys?

4                    MR. COLUNGA:  Yes.

5                    MR. HARTMANN:  Yes.

6                    MR. COLUNGA:  That works for me, your Honor.  I'm not

7    allowed to take vacation.

8                    THE COURT:  Good.  You've been well trained.  No.

9                    THE CLERK:  Which date?

10                   THE COURT:  How about the 21st, 21st at 10:00 o'clock.

11   So we'll vacate the -- vacate the August 7 date.  And, okay.

12                   MR. BURKE:  Than you, Judge.

13                   MR. COLUNGA:  Thank you, your Honor.

14        (Which were all the proceedings had at the hearing of the

15         within cause on the day and date hereof.)

16                              CERTIFICATE

17            I HEREBY CERTIFY that the foregoing is a true, correct

18   and complete transcript of the proceedings had at the hearing

19   of the aforementioned cause on the day and date hereof.

20

21    /s/Alexandra Roth                              8/30/2012
      _____          _____
22    Official Court Reporter                       Date
      U.S. District Court
23    Northern District of Illinois
      Eastern Division
24

25

# Exhibit I

Dun & Bradstreet, Inc.
Supplemental Discovery Responses


LEGAL COUNSEL

August 15, 2012

WRITER'S DIRECT NUMBER: (630) 955-6124
DIRECT FAX: (630) 955-4281
INTERNET: Isaac.Colunga@icemiller.com

**_VIA FEDERAL EXPRESS_**

Alexander H. Burke
Burke Law Offices, LLC
155 N. Michigan Avenue, Suite 9020
Chicago, IL 60601

Albert Hartmann
DLA Piper LLP
203 N. LaSalle Street, Suite 1900
Chicago, IL 60601

> **_RE:_** _Nicholas Martin v. Dun & Bradstreet, Inc., et al._
> _Case No. 11 C 215_

Dear Counsel:

Enclosed please find Dun & Bradstreet, Inc.'s Supplemental Responses to Plaintiff's First Set of Discovery Requests, and Dun & Bradstreet's Production of Documents Responsive to Plaintiff's Requests.

Very truly yours,

ICE MILLER LLP

Isaac Colunga

IC/dd
Enclosures
Cc:    Bart Murphy

C/140430.1

2300 Cabot Drive | Suite 455 | Lisle, IL 60532 | P 630-955-0555 | F 630-955-0662

DUPAGE COUNTY IL | CHICAGO | CLEVELAND | COLUMBUS | INDIANAPOLIS | WASHINGTON DC          www.icemiller.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

NICHOLAS MARTIN, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

DUN & BRADSTREET, INC., and CONVERGYS CUSTOMER MANAGEMENT GROUP, INC.,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

No. 12 C 215

Magistrate Judge Morton Denlow

## DUN & BRADSTREET, INC.'S SUPPLEMENTAL RESPONSES TO PLAINTIFF'S FIRST SET OF DISCOVERY REQUESTS

Defendant, Dun & Bradstreet, Inc. ("D&B"), by its attorneys Ice Miller LLP, hereby submits the following supplemental responses to Plaintiff Nicholas Martin's ("Plaintiff") First Discovery Requests:

### PRELIMINARY STATEMENT

D&B has not completed its investigation, discovery or its preparation for trial. Accordingly, all responses below are based only upon such information and documents that are presently available and specifically known to D&B. All responses are provided without prejudice to D&B's rights to: (a) produce documents, evidence of any subsequently discovered fact or facts, or analyses not yet obtained or completed; (b) otherwise assert factual and legal contentions as additional facts are ascertained, analyses are made, and legal research is completed; and (c) amend or withdraw any responses accordingly.

### GENERAL OBJECTIONS

1.     D&B objects to each of the Plaintiff's requests to the extent they call for answers or documents protected by the attorney-client privilege, work product doctrine, or any other

privilege. Disclosure of any information protected from disclosure by any such privilege shall be deemed inadvertent and shall not constitute a waiver of such privilege.

2.       D&B objects to Plaintiff's requests to the extent they impose burdens or obligations beyond those required by the Federal Rules of Civil Procedure.

3.       D&B objects to Plaintiff's requests to the extent they are overbroad and unduly burdensome insofar as they seek information not relevant to the subject matter in this litigation and not related to the claims or defenses alleged herein.

4.       D&B objects to the following requests on the grounds that they are not sufficiently limited in scope or in time period.

5.       D&B objects to the following requests to the extent that they seek confidential or trade secret information.

6.       The foregoing general objections are incorporated in each of the responses set forth below, as if fully set forth therein.

## RESPONSES TO REQUESTS FOR ADMISSION

1.       Convergys called 630- ▓ 3271 at least once in 2012.

**RESPONSE:** D&B has no knowledge or information sufficient to admit or deny Request No. 1 because Request No. 1 seeks information in the possession of another party to this suit and not D&B.

2.       Convergys called 630- ▓ 3271 at least once in 2011.

**RESPONSE:** D&B has no knowledge or information sufficient to admit or deny Request No. 2 because Request No. 2 seeks information in the possession of another party to this suit and not D&B.

2

3.      Convergys called 630-■3271 at least once in 2010.

**RESPONSE:** D&B has no knowledge or information sufficient to admit or deny

Request No. 3 because Request No. 3 seeks information in the possession of another party to this

suit and not D&B.

4.      Convergys used a predictive dialer to call more than 10,000 telephone numbers on
behalf of defendant Dun & Bradstreet in 2011.

**RESPONSE:** D&B has no knowledge or information sufficient to admit or deny

Request No. 4 because Request No. 4 seeks information in the possession of another party to this

suit and not D&B.

5.      Dun & Bradstreet authorized a January 2012 call made by Convergys to 630-■
3271.

**RESPONSE:** Admitted.

6.      Plaintiff did not provide 630-■3271 to Convergys.

**RESPONSE:** D&B has no knowledge or information sufficient to admit or deny

Request No. 6 because Request No. 6 seeks information in the possession of another party to this

suit and not D&B.

7.      Plaintiff did not provide 630-■3271 to Dun & Bradstreet.

**RESPONSE:** D&B's investigation of Request No. 7 is ongoing and at this point D&B

has no knowledge or information sufficient to adequately respond to Request No. 7, and

therefore D&B denies Request No. 7.

8.      Convergys used telephone equipment that had the capacity to dial numbers
without human intervention to call 630-■3271 in January 2012.

3

**RESPONSE:** D&B has no knowledge or information sufficient to admit or deny Request No. 8 because Request No. 8 seeks information in the possession of another party to this suit and not D&B.

9.     You used telephone equipment that had the capacity to dial numbers without human intervention to call 630███-3271 in 2012.

**RESPONSE:** D&B objects to Request No. 9 on the grounds that it is overly-broad, vague and ambiguous. In further response, without waiving the specific and general objections set forth above, D&B denies Request No. 9.

10.     Admit that no human being pressed the digits 630-███3271 for any call to plaintiff from any defendant in 2012.

**RESPONSE:** D&B objects to Request No. 10 on the grounds that it is overly-broad, vague and ambiguous. D&B has no knowledge or information sufficient to admit or deny Request No. 10 because Request No. 10 seeks information in the possession of other third-parties and not D&B.

11.     Admit that telephone equipment and software dialed 630-███3271 when you called plaintiff in 2012.

**RESPONSE:** D&B objects to Request No. 11 on the grounds that it is overly-broad, vague and ambiguous. In further response, without waiving the specific and general objections set forth above, D&B denies Request No. 11.

12.     You were aware by January 2011 of the decision *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling,* CG-278, 23 FCC Rcd. 559 (Jan. 4, 2008).

**RESPONSE:** Denied.

4

13. You did not have a policy of scrubbing phone numbers you called using a predictive dialer at any time during 2010.

**RESPONSE:** D&B objects to Request No. 13 on the grounds that it is overly-broad, vague and ambiguous. D&B further objects on the grounds that D&B has no knowledge or information sufficient to admit or deny Request No. 13 because Request No. 13 seeks information in the possession of another party to this suit and not D&B. In further response, without waiving the specific and general objections set forth above, D&B denies Request No. 13.

14. You did not have a policy of scrubbing phone numbers you called using a predictive dialer at any time during 2011.

**RESPONSE:** D&B objects to Request No. 14 on the grounds that it is overly-broad, vague and ambiguous. D&B further objects on the grounds that D&B has no knowledge or information sufficient to admit or deny Request No. 14 because Request No. 14 seeks information in the possession of another party to this suit and not D&B. In further response, without waiving the specific and general objections set forth above, D&B denies Request No. 14.

15. You did not have a policy of scrubbing phone numbers you called using a predictive dialer at any time during January 2012.

**RESPONSE:** D&B objects to Request No. 15 on the grounds that it is overly-broad, vague and ambiguous. D&B further objects on the grounds that D&B has no knowledge or information sufficient to admit or deny Request No. 15 because Request No. 15 seeks information in the possession of another party to this suit and not D&B. In further response, without waiving the specific and general objections set forth above, D&B denies Request No. 15.

16. There are more than 1,000 phone numbers in the following set:

All persons nationwide who defendant Dun & Bradstreet, Inc. or some person on its behalf called on their cell phone using a device that has the capacity to dial numbers without human intervention, where the phone number called was

obtained from some source other than directly from the called party, where any call was made between and including a date two years prior to the filing of this action, ongoing.

**RESPONSE:** D&B objects to Request No. 16 on the grounds that it is overly-broad, vague and ambiguous. D&B further objects on the grounds that D&B has no knowledge or information sufficient to admit or deny Request No. 16 because Request No. 16 seeks information in the possession of another party to this suit and not D&B. In further response, without waiving the specific and general objections set forth above, D&B denies Request No. 16.

17.    There are more than 1,000 phone numbers in the following set:

> All persons nationwide who Convergys Customer Management Group, Inc. or some person on its behalf called on their cell phone using a device that has the capacity to dial numbers without human intervention, where the phone number called was obtained from some source other than directly from the called party, where any call was made between and including a date two years prior to the filing of this action, ongoing.

**RESPONSE:** D&B objects to Request No. 17 on the grounds that it is overly-broad, vague and ambiguous. D&B further objects on the grounds that D&B has no knowledge or information sufficient to admit or deny Request No. 17 because Request No. 17 seeks information in the possession of another party to this suit and not D&B. In further response, without waiving the specific and general objections set forth above, D&B denies Request No. 17.

## ANSWERS TO INTERROGATORIES

1.    Identify all automated calls (including attempted calls) for each of the phone numbers in the class described below, including plaintiff. A complete answer will include at least the following:

> a.    Identifying information for the person you were trying to reach (e.g. name, business name, address, email, fax number, all phone numbers),

b. Information for the calls themselves, including the phone number called, the date and time of the call and the result of the call (e.g. no answer, message left, spoke with John Doe and updated business data, etc.), and whom you spoke with, if anyone, and the substance of the conversation;

c. Information regarding the dialer and equipment used, including identification of the equipment and software used to make the call (e.g. Guaranteed Contacts, Aspect, Avaya), the location for call origination/dialer; and

d. Identify the source(s) where you obtained the telephone number called and the facts and circumstances surrounding such.

"All cell phone numbers nationwide who you or some person on your behalf called on using a device that has the capacity to dial numbers without human intervention, where defendant obtained the phone number from some source other than directly from the called party, where any call was made between and including a date two years prior to the filing of this action, ongoing."

We anticipate, based upon experience and defendants' answers denying almost everything alleged, that defendants will take the position that they cannot answer this interrogatory, or that the answer is "nobody" because they did not use equipment that has the capacity to dial without human intervention. If this is the case, please answer this interrogatory without regard to that criteria (i.e. provide information for all calls), or contact the undersigned to discuss.

Similarly, if you contend that you do not know what phone numbers you called were cellular telephone numbers, please produce all phone numbers and plaintiff's counsel will perform a scrub through Neustar or similar to determine this.

We request that a signature-verified spreadsheet or access database be created in response to this interrogatory, organized with a separate row corresponding to each call, chronologically. The remainder of the row will include the rest of the requested information, one column for each piece of requested information. Columns should be labeled at the top, and be consistent for each row/call.

**ANSWER:** D&B objects to the narrative response required under this Interrogatory, and further objects on the grounds the Interrogatory is vague, ambiguous and unduly burdensome.

Without waiving the specific and general objections set forth above, D&B states that it is unable to compile documents or create a spreadsheet that may contain information responsive to

7

this Interrogatory's subparts a. through c. As to subpart d., D&B states that it obtains telephone numbers from a variety of sources, including the public domain, and many of the phone numbers that it authorized Convergys to call could have been obtained from the person or entity called through self-reporting.

D&B maintains a self-service tool known internally as "iUpdate." The iUpdate tool allows D&B customers to provide their own information to D&B, such as business addresses and phone numbers, and to authorize D&B to verify that information. D&B receives approximately 300 to 400 self-reported updates per day through the iUpdate system.

D&B also has relationships with banks, financial institutions and other entities (collectively referred to herein as, "Creditors") that extend credit to businesses and individuals. The Creditors' customers may apply for credit and authorize the Creditors to verify the information that the customers supply on their credit applications. D&B verifies the information on behalf of the Creditors. In 2010 D&B received approximately 1170 verification requests per day from Creditors. In 2011 D&B received approximately 1050 verification requests per day from Creditors.

D&B also has an agreement with the federal government, which requires all companies doing business with the federal government to obtain what is called a D&B "DUNS Number." The companies must also authorize the federal government to verify the information that the companies submit to the federal government. D&B verifies the information on behalf of the federal government. D&B receives approximately 800 to 900 verification requests per day from the federal government.

8

2.      For each person and call responsive to the previous interrogatory you contend you had prior express consent to call, identify all documents, data, materials, testimony and other things that support such contention, and explain how application of law to those facts suggests that prior express consent was present.

**ANSWER:**   D&B objects to the narrative response required under this Interrogatory, and further objects on the grounds the Interrogatory is vague, ambiguous and unduly burdensome.

Without waiving the specific and general objections set forth above, D&B states that it is possible that many of the phone numbers that it authorized Convergys to call could have been obtained directly from the person or entity called through self-reporting.   D&B also refers Plaintiff to its Answer to Interrogatory No. 1.

3.      Identify all documents, data materials testimony or other things that you have possession, custody or control over, AND those that are not in your possession, custody or control but which you are aware of, that support or refute *any* defense you claim applies to any person responsive to interrogatory 1.

**ANSWER:**   D&B objects to this Interrogatory on the grounds the Interrogatory is vague, ambiguous and unduly burdensome.

Without waiving the specific and general objections set forth above, D&B refers Plaintiff to its Answer to Interrogatory No. 1.  D&B further states that it does not possess any materials, testimony or other things that refutes this information, and therefore D&B does not possess information responsive to this Interrogatory other than its Answer to Interrogatory No. 1.

4.      Identify all of your dialers. Include the make, model, physical location, how they are used, and whether they were used to call plaintiff or any other person responsive to interrogatory 1.

**ANSWER:**   D&B objects to this Interrogatory on the grounds the Interrogatory is vague and ambiguous.  Without waiving the specific and general objections set forth above,

D&B states that, to its knowledge, as investigation is ongoing, it does not believe that it possesses any "dialers" that it used to call plaintiff or any other person responsive to Interrogatory No.1 and therefore D&B does not possess information responsive to this Interrogatory.

5.    If you contend that an "automatic telephone dialing system" was not used to call any class member (including plaintiff), identify all documents, data, testimony and other things that support or refute this contention (whether in your possession, custody or control or not), and explain application of law to fact as to how they might support the contention.

**ANSWER:**    D&B objects to the narrative response required under this Interrogatory, and further objects on the grounds the Interrogatory is vague, ambiguous and unduly burdensome.

Without waiving the specific and general objections set forth above, D&B refers Plaintiff to its Agreement with Convergys.

6.    Identify all categories and sources of Electronically Stored Information, including backups and other difficult to obtain categories, relating to plaintiffs and the class members.

Include all relevant information, including at least: a description of the substance of the data, physical location, format, accessibility, person who is responsible for such data (or who has personal knowledge regarding the data) and bates number, if any. If the data has not been produced, explain why.

**ANSWER:**    D&B objects to this Interrogatory on the grounds the Interrogatory is vague, ambiguous and unduly burdensome.

Without waiving the specific and general objections set forth above, D&B directs Plaintiff to D&B's Rule 26(a)(1) initial disclosures, which lists the person with knowledge regarding D&B's relevant electronic data.  D&B further states that information relating to Plaintiff and the class members may be obtained through Salesforce.com.  D&B does not have

10

an automated method to obtain or retrieve any other information relating to Plaintiff and the class members.

7.    Identify every claim you are aware of that you used an automatic telephone dialing system as defined in the TCPA, implementing regulations and orders. Include, for example, formal and informal claims including demand letters, threatening emails and letters, regulatory complaints with the FCC or FTC, and lawsuits, including particularly class actions. Include citation to bates numbers. (See document request 9).

**ANSWER:**    D&B objects to this Interrogatory on the grounds the Interrogatory is vague, ambiguous and unduly burdensome. Without waiving the specific and general objections set forth above, D&B states that it did not "use[]" an automatic telephone dialing system as defined in the TCPA, implementing regulations and orders" and is therefore not the subject of any claims or lawsuits that allege its use of "an automatic telephone dialing system.

8.    With respect to each expert, retained or nonretained, whom you will or may call upon to give evidence or testimony in connection with this case, please state: (a) his name, address, telephone number, occupation, and current employment; (b) the subject matter of his expertise; (c) his educational background, academic degrees, employment history, employment experience, and any other matters which you contend qualify him as an expert; (d) the substance of all facts and opinions to which he could testify if called as a witness; (e) a summary of the grounds for each such opinion.

**ANSWER:**    D&B objects to the narrative response required under this Interrogatory, and further objects on the grounds the Interrogatory is vague, ambiguous and unduly burdensome. D&B further responds that to the extent it knows of any expert that it may call to give evidence or testimony D&B will disclose such expert in due course pursuant to Rule 26(a)(2).

### RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

1.    All documents, records, data, recordings and other materials relating to plaintiff or 630-███3271, or which are indexed, filed or retrievable under any of them, or any number, symbol, designation or code (such as an account number or Social Security number) associated with any of them.

11

**RESPONSE:** D&B objects to Request No. 1 on the grounds it is vague, ambiguous and unduly burdensome.

Without waiving the specific and general objections set forth above, D&B refers Plaintiff to its corresponding production of documents.

2.     All documents that concern or relate to any person or phone number responsive to interrogatory 1.

Plaintiff agrees to delay production of these materials for all responsive persons other than those for whom defendant claims it had prior express consent to call and for which they claim some other defense applies. For any person or phone number either defendant claims consent, a full response to this interrogatory must be provided, and bates numbers referenced in response to interrogatories 2 and 3.

**RESPONSE:** D&B objects to Request No. 2 on the grounds it is vague, ambiguous and unduly burdensome.

Without waiving the specific and general objections set forth above, D&B states that it does not have an automated method to obtain or retrieve any other information relating to Plaintiff and the class members, and therefore D&B does not possess documents or information responsive to this Request.

3.     All documents referenced or referred to in your response to any interrogatory, including but not limited to interrogatory 1.

Plaintiff agrees to delay production of these materials for all responsive persons other than those for whom defendant claims it had prior express consent to call and for which they claim some other defense applies. For any person or phone number either defendant claims consent, a full response to this interrogatory must be provided, and bates numbers referenced in response to interrogatories 2 and 3.

**RESPONSE:** D&B objects to Request No. 3 on the grounds it is vague, ambiguous and unduly burdensome.

Without waiving the specific and general objections set forth above, D&B states that it does not have an automated method to obtain or retrieve any other information relating to Plaintiff and the class members, and therefore D&B does not possess documents or information responsive to this Request.

4.      All documents that describe your dialers (e.g. manuals, training materials, emails, instructional videos, intranet how-to) or relate to whether they have the capacity to dial numbers without human intervention.

**RESPONSE:** To its knowledge, as investigation is ongoing, D&B does not believe that it possesses documents responsive to this Request.

5.      All documents that support or refute any affirmative defense in this case or relating to prior express consent to receive calls made with an automatic telephone dialing system or prerecorded or artificial voice, for each class member including plaintiffs.

**RESPONSE:** D&B objects to Request No. 5 on the grounds it is vague, ambiguous and unduly burdensome. Without waiving the specific and general objections set forth above, D&B refers Plaintiff to its Answer to Interrogatory No. 1.

6.      All documents, data or other materials you reviewed or referenced in responding to any discovery request in this case.

**RESPONSE:** D&B objects to Request No. 6 on the grounds it is vague, ambiguous and unduly burdensome. Without waiving the specific and general objections set forth above, D&B refers Plaintiff to its corresponding production of documents.

7.      A copy of any sworn testimony relating to your dialers, or policies, practices or procedures relating to the use of dialers. A full response would include, for example, deposition testimony, declarations and affidavits.

**RESPONSE:** D&B does not possess documents responsive to this Request.

8.      All agreements between the parties that concern the use of a dialer.

13

**RESPONSE:** D&B objects to Request No. 8 on the grounds it is vague, ambiguous and unduly burdensome. Without waiving the specific and general objections set forth above, D&B refers Plaintiff to its corresponding production of documents.

9.    All documents concerning every claim you are aware of that you used an automatic telephone dialing system as defined in the TCPA, implementing regulations and orders. Include, for example, formal and informal claims including demand letters, threatening emails and letters, regulatory complaints with the FCC or FTC, and lawsuits, including particularly class actions.

**RESPONSE:** D&B does not possess documents responsive to this request.

10.    All insurance policies that could possibly afford any coverage with respect to the matters complained of in this case together with all correspondence discussing, accepting or declining coverage or reserving rights with respect thereto.

**RESPONSE:** Without waiving the general objections set forth above, D&B refers Plaintiff to its corresponding production of documents.

11.    All documents received from third parties that relate to this case, without regard to time. Responsive materials would include, for example, responses to subpoenas.

**RESPONSE:** D&B does not possess documents responsive to this request.

Respectfully submitted,

DUN & BRADSTREET, INC.

By:    /s/ Isaac J. Colunga
        One of its Attorneys

Bart T. Murphy
Isaac J. Colunga
**ICE MILLER LLP**
2300 Cabot Dr., Suite 455
Lisle, Illinois  60532
630-955-6124

14

## VERIFICATION OF INTERROGATORY ANSWERS

I, Donald D. Davis, am the Vice President of North America Customer Service for Dun & Bradstreet, Inc., and I believe, based on reasonable inquiry, that the foregoing answers to the attached Interrogatories are true and correct and to the best of my knowledge, information and belief.

Date:   August 9, 2012

By:   _____

Donald D. Davis
Dun & Bradstreet, Inc.

## CERTIFICATE OF SERVICE

The undersigned, an attorney, states that on August 15, 2012, he caused the foregoing to be served on all counsel of record by Federal Express:

Alexander H. Burke          aburke@burkelawllc.com
Burke Law Offices, LLC
155 N. Michigan Avenue, Suite 9020
Chicago, IL 60601
(312) 729-5288

Albert Hartmann          Albert.hartmann@dlapiper.com
DLA Piper LLP
203 N. LaSalle Street, Suite 1900
Chicago, IL 60601
(312) 368-2142

Isaac J. Colunga