**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NICHOLAS MARTIN on behalf of himself and others similarly situated, | ) ) | 1:12-cv-215 |
|     Plaintiff, | ) | |
| | ) | Magistrate Judge Martin |
|       v. | ) | (by consent) |
| | ) | |
| DUN & BRADSTREET, INC., and | ) | JURY DEMANDED |
| CONVERGYS CUSTOMER MANAGEMENT | ) | |
| GROUP, INC. | ) | |
|     Defendants. | ) | |

**PLAINTIFF'S MEMO IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff Nicholas Martin ("Plaintiff") respectfully submits this memorandum in support of final approval of the settlement reached in this class action. For the reasons set forth in this memorandum and in the papers previously submitted in support of approval, the settlement is fair, adequate and reasonable and in the best interests of the Class. Accordingly, Plaintiff respectfully requests that the Court grant final approval to the settlement by: (1) approving the proposed Settlement Agreement as fair, adequate, and reasonable for the certified Class; and (2) determining that adequate notice was provided to the Class. A brief summary of the result of notice follows:

-    4,858 valid claim forms (including 39 late claims, to which defendants do not object);

-    12 timely exclusions, one late exclusion;

-    No objections.

If the Court approves the settlement as requested, class members that submitted valid claim forms will receive approximately $635 apiece.

For the reasons herein, the Court should grant final approval of this settlement.

## I.  FINAL APPROVAL SHOULD BE GRANTED

"Federal courts naturally favor the settlement of class action litigation."  *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (citing *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888–89 (7th Cir. 1985)).  When faced with a motion for final approval of a class action settlement under Rule 23, a court's inquiry is limited to whether the settlement is "lawful, fair, reasonable, and adequate."  *Uhl v. Thoroughbred Tech. & Telecommunc'ns, Inc.*, 309 F.3d 978, 986 (7th Cir. 2009).  A settlement is fair, adequate, and reasonable, and merits final approval, when "the interests of the class as a whole are better served by the settlement than by further litigation." *Manual for Complex Litigation* (Fourth) ("MCL 4th") § 21.61, at 480 (2010).

**A.     The Settlement Is the Result of Informed, Arm's-Length Negotiations**

A proposed class settlement is presumptively fair where it "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced."  H. Newberg & A. Conte, Newberg on Class Actions ("Newberg") § 11:41 (4th ed. 2002); *Goldsmith v. Tech Solutions Co.*, No. 92 C 4374, 1995 WL 17009594, *3 (N.D. Ill. Oct. 10, 1995).  The settlement here satisfies this test.

To reach this settlement, the parties engaged in extensive arms-length negotiations, which included several telephonic and two in-person mediations with Seventh Circuit Settlement Conference Senior Conference Attorney Joel N. Shapiro.  Mr. Martin attended and actively participated in both mediations, and has been actively involved in all other negotiations through in-person meetings with Class Counsel, and by telephone.

Those settlement discussions culminated in a Settlement Agreement that provides substantial benefits to the Class, including a settlement fund for the class of a maximum of $7.5 million, and a minimum $4.9 million. <u>Exhibit 1</u>. The parties are represented by highly competent counsel who have years of experience litigating and settling complex class actions, including actions involving alleged violations of the TCPA. *See generally* <u>Exhibit 2</u>, Burke Decl.

The settlement is the result of a thorough investigation by the parties. During the negotiating process, the parties exchanged detailed, confidential mediation statements in which they set forth their respective litigation positions. <u>Exhibit 2</u>. Plaintiff also demanded and received information establishing the size of the Class. <u>Exhibit 2</u> ¶2. Indeed, this information was crucial for Plaintiff to evaluate class-wide damages and he refused to settle without it. *Id.* This information permitted Plaintiff to meaningfully negotiate on behalf of the class.

For these reasons, the settlement is entitled to a presumption of fairness.

**B.      Class Members Received the Best Notice Practicable**

This Court has already determined that the notice program in this case meets the requirements of due process and applicable law, provides the best notice practicable under the circumstances, and constitutes due and sufficient notice to all individuals entitled thereto. Dkt. No. 58 ¶ 7. This notice program has been fully implemented by independent claims administrator, AB Data, Ltd. ("AB Data"). *See generally,* <u>Exhibit 3</u>, Affidavit of Christina Peters-Stasiewicz. ("AB Data Decl.")

Defendants provided AB Data a list containing the names and addresses of the 65,334 class members (the "Class List"). AB Data Decl. ¶6. After receiving the Class List, AB Data processed the data to ensure adequate formatting. *Id.* AB Data then mailed a postcard

containing a summary of the settlement to all persons on the Class List using the formatted addresses. *Id.* ¶ 7. AB Data mailed postcards to each of the 65,334 class members at the best known address. *Id.* ¶ 8.

The noticed mailed to Class members informed them of: (1) the settlement's benefits; (2) deadlines for all Class members to file a claim form, opt out of the settlement, and object to the settlement and/or Class Counsel's fee request; (3) the amount being sought by Class Counsel in attorneys' fees and costs; (4) the address for the settlement website where they can obtain more information, download forms, and file claims; and (5) the date and location of the final approval hearing. If a mailed notice was returned as undeliverable, AB Data attempted to locate updated addresses and then re-mailed the notices to the updated addresses. *Id.* ¶ 11. If notices were returned with forwarding addresses, AB Data re-mailed the notices to the Class members at their forwarding addresses. *Id.*

In addition to mailed notice, AB Data published notice of the settlement and settlement documents at the settlement website, www.DunBradstreetConvergysTCPAsettlement.com. *Id.* ¶ 13. The website received substantial traffic; for example, there have been 4,115 "hits" to the settlement website, and the settlement agreement was downloaded 206 times. *Id.* ¶¶14-15. Pursuant to the preliminary approval order and notice plan, AB Data also set up a toll-free interactive voice response (IVR) system, which received 85 calls. *Id.* ¶16. As of November 5, 2013, AB Data had received a total of 85 telephone calls to that toll free line. Id ¶16.

In sum, the notice program approved by this Court and implemented by AB Data has provided due and adequate notice of these proceedings and of the matters set forth therein, including the Settlement Agreement, to all parties entitled to such notice and satisfied the

requirements of Federal Rule of Civil Procedure 23 and the requirements of constitutional due process.

## C.     The Settlement Satisfies the Criteria for Final Approval

In assessing the fairness, reasonableness, and adequacy of a settlement, courts view the facts in the light most favorable to the settlement. *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 280 F.R.D. 364, 375 (N.D. Ill. 2011) (citing *Isby*, 75 F.3d at 1199). "[T]he Court must not substitute its own judgment as to the optimal settlement terms for the judgment of the litigants and their counsel." *Id.* (citing *Armstrong*, 616 F.2d at 315).

To evaluate fairness, courts consider the following factors: (1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement; (2) the complexity, length and expense of the litigation; (3) the amount of opposition to the settlement by affected parties; and (4) the opinion of competent counsel; and (5) the amount of discovery completed at the time of settlement. *Isby*, 75 F.3d at 1199. Of these considerations, the first is most important. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). Applied to this case, the relevant criteria support final approval of the settlement.

### 1.     The Strength of Plaintiff's Case Compared to the Amount of the Settlement

Although Plaintiff has thoroughly investigated the factual and legal bases for his claims and has developed substantial evidence supporting his allegations that defendants violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*., one cannot ignore the presence of significant risks in continuing the litigation had settlement not occurred. This case turns on, among other things, competing interpretations as to whether Plaintiff and Class

- 5 -

members "consented" to receiving automated calls from defendants on their cellular telephone. Plaintiff's position is that defendants failed to obtain his and Class members' consent before placing automated calls to Plaintiff and Class members' cellular telephones. Plaintiff alleges that in such circumstances, Plaintiff and Class members are entitled to minimum statutory damages of $500 per call.

Defendants, on the other hand, have steadfastly maintained that some Class members may have given them prior express consent to contact them at their cellular phone numbers. Defendant Dun & Bradstreet further asserted that it did not use an "automatic telephone dialing system" as that phrase is used by the TCPA.

Under the settlement, Class members avoid all of those risks and obstacles to recovery and receive substantial benefits, and in a timely fashion. Plaintiff and his counsel have negotiated an excellent settlement for the Class that requires defendants to pay between $4.9 million and $7.5 million into a settlement fund for the benefit of the Class. All Class members can recover a *pro rata* portion of the settlement fund after settlement costs are deducted, through a straightforward claim process that only requires completing a simple one-page form. As of November 5, 2013, 4,858 individuals have submitted valid claims.[1] Because of the number of claimants, defendants will be paying the "floor" settlement amount of $4.9 million.

Furthermore, the release in this case is narrowly tailored to affect only TCPA claims arising out of the discreet calls that were the subject of this case. Exhibit 1 at ¶4.01.

---

[1] AB Data analyzed these claims, and determined that there were 218 duplicate claims. Because the settlement agreement limits class members to one claim per person, the duplicate claims have been rejected. AB Data Decl. ¶¶17-18.

In light of the real risks outlined above combined with the fact that Plaintiff and Class members faced lengthy, protracted, and expensive litigation had they not settled, this is a fair settlement that puts money in Class members' pockets immediately. *See In re Kentucky Grilled Chicken*, 208 F.R.D. at 377 ("It has been held proper to take the bird in hand instead of a prospective flock in the bush") (quotation and internal marks omitted).

        2.      <u>The Risk, Expense, Complexity, and Likely Duration of Further Litigation</u>

"Final approval of a settlement is favored where continued litigation would require resolution of complex issues at considerable expense and would absorb many days of trial time." *In re Kentucky Grilled Chicken*, 280 F.R.D. at 377 (citing *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000) (finding that settlement is favored where further litigation would require additional written discovery, depositions and expert discovery, and where appellate practice is likely to result). Throughout the negotiation process, defendants vigorously defended their position and expressed every intention of continuing a spirited defense, absent a settlement, through trial and the interlocutory class certification appeal. Class Counsel have a significant amount of experience in consumer class action litigation and know from their own experience that any case involving a nationwide class can, and often does, lead to costly litigation that goes on for years.

Moreover, there is a substantial risk of losing inherent in any jury trial. Even if Plaintiff prevailed at trial, defendants would almost certainly appeal, threatening a reversal of any favorable outcome and causing significant delays in obtaining any relief for Class members. "Thus, simply obtaining a result—good or bad—could be years away if litigation were to continue, which dictates that the immediate benefit provided by the Settlement Agreement is

strongly preferred." *See In re Kentucky Grilled Chicken*, 280 F.R.D. at 377 (approving coupon settlement where the court found that further litigation of the nationwide class action would require the parties to incur the costs of further discovery, retention of expert witnesses, brief highly contested motions, and participate in a lengthy trial).

Another risk Plaintiff faced going forward is that this Court, or the Seventh Circuit, would decertify the class. As Plaintiff explained at preliminary approval, courts are split and have either granted or denied class certification in TCPA cases depending upon the facts of the case. *Compare Bridgeview Heath Care Ctr. Ltd. v. Clark*, No. 09 C 5601, 2011 WL 4628744, at *5 (N.D. Ill. Sept. 30, 2011) (granting class certification) with *Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1169 (S.D. Ind. 1997) (denying class certification). If defendants were able to present convincing facts to support their position, the Court could have refused to certify the class, leaving only the named Plaintiff to pursue his individual claims.

3.    No Opposition to the Settlement

The lack of objectors challenging the settlement favors a finding that the settlement is fair and reasonable. *In re Kentucky Grilled Chicken*, 280 F.R.D. at 377 (citing *Am. Civil Liberties Union v. U.S. Gen. Servs. Admin.*, 235 F. Supp. 2d 816, 819 (N.D. Ill. 2002). Thus far, in a class consisting of hundreds of thousands of members, no Class members have objected to the settlement and there have been only seven requests for exclusion. This constitutes strong circumstantial evidence that the settlement is fair. *See In re Kentucky Grilled Chicken*, 280 F.R.D. at 377 (approving settlement where there was only one objection). Indeed, settlements have been approved over the objections of a relatively large percentage of the Class. *Isby*, 75

- 8 -

F.3d at 1200 (approving settlement over objections of 13% of the class); *Hiram Walker & Sons*,

768 F.2d at 891 (approving settlement where 15% of the affected class objected).[2]

4.    The Opinion of Counsel

Where class counsel is qualified and well informed, their opinion that a settlement is

fair, reasonable, and adequate is entitled to significant weight. *See Isby*, 75 F.3d at 1200. Here,

Class Counsel, who are extremely experienced in class action litigation generally and TCPA cases

in particular, believe the settlement is fair, reasonable, adequate, and in the best interest of the

Class as a whole. Exhibit 2, Declaration of Alexander H. Burke.

5.    The Extent of Discovery Completed and the Stage of the Proceedings

Courts consider the extent of discovery completed and the stage of the proceedings in

determining whether a class action settlement is fair, adequate and reasonable.    Courts

regularly approve prompt settlements achieved prior to the commencement of formal

discovery, "especially where counsel have conducted a significant amount of informal discovery

and dedicated a significant amount of time and resources to advancing the underlying

lawsuits." *In re Kentucky Grilled Chicken*, 280 F.R.D. at 378 (quoting *In re AT&T Mobility

Wireless Data Servs. Sales Litig.*, 270 F.R.D. 350, 350 (N.D. Ill. 2010) (internal quotation marks

omitted)).

The ssettlement is the result of a thorough investigation, formal and informal discovery,

and an extensive evaluation of Plaintiff's legal claims.    Certification of the class prompted the

parties to brief the central factual and legal issue of this case — whether certification was

---

[2] The exclusion and objection deadline expires on October 10, 2013.  Plaintiff will respond to any objections received between the filing of this motion and the deadline.

proper in this case — early on.  In advance of mediation, the parties exchanged further analyses of the issues and set forth their positions in even more detail.  Even after the parties came to an agreement in principle, Plaintiff refused to agree to a settlement amount until he had received the number of unlawful calls that were made to Class members and providing a basis for the estimate. The fact that the settlement was achieved through negotiations by well-informed counsel favors settlement approval.

## II.  THE COURT SHOULD APPROVE THE REQUESTED FEES AND SERVICE AWARD

### A.    Class Counsel's Requested Fee Is Reasonable

#### 1.   One-Third of the Common Fund Is in Line with Fees Awarded in Similar Cases

Attorneys who recover a common fund for the benefit of a class are entitled to a reasonable attorney fee from the fund as a whole.  In a recent TCPA case, *Holtzman v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013), Judge Easterbrook found that taking one-third of each class member's recovery is the "appropriate" amount.

This is consistent with substantial previous authority. *Sutton v. Bernard*, 504 F.3d 688, 691–92 (7th Cir. 2007).  "[T]he approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred upon the class." *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 280 F.R.D. 364, 379 (N.D. Ill. 2011).  Courts should "do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Id.*  The market price "depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the work necessary to resolve the litigation, and in part on the stakes of the case." *Sutton*, 504 F.3d at 693.

"[T]here are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994).

> The percentage method is bereft of largely judgmental and time-wasting computations of lodestars and multipliers.  These latter computations, no matter how conscientious, often seem to take on the character of so much Mumbo Jumbo.  They do not guarantee a more fair result or a more expeditious disposition of litigation.

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989); *see also Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (noting it is easier to establish market based contingency fee percentages than to "hassle over every item or category of hours and expense and what multiple to fix and so forth"); *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996) ("[T]he percentage of fund method provides a more effective way of determining whether the hours expended were reasonable."), *aff'd*, 160 F.3d 361 (7th Cir. 1998).

One-third of the common fund, a percentage of the benefit conferred upon the Class, is at the market price and therefore reasonable, as reflected in the fees approved by other courts in this Circuit and elsewhere.  *In re Ky. Grilled Chicken*, 280 F.R.D. at 380–81 (citing cases, and describing a fee of 32.7% of the common fund as "well within the market rate and facially reasonable"); *see also Silverman v. Motorola Solutions, Inc.*, --- Fed. Appx. ---, Nos. 12–2339, 12–2354, 2013 WL 4082893, *2 (7th Cir. Aug. 14, 2013) (approving a fee of 27.5% of $200 million common fund and noting that another court had approved a fee of 30% for the first $10 million of a common fund); *City of Greenville v. Syngenta Corp Prot., Inc.*, 904 F. Supp. 2d 902, 908–09 (S.D. Ill. 2012) (approving a one-third fee because a "contingent fee of one-third of any recovery after the reimbursement of costs and expenses reflects the market price" and citing

cases); Will v. Gen. Dynamics Corp., Civil No. 06-698-GPM, 2010 WL 4818174, *3 (Nov. 22, 2010) (finding "the market rate for complex plaintiffs' attorney work in this case and similar cases is a contingency fee" and agreeing "a one-third fee is consistent with the market rate"). See In re Heritage Bond Litig., No. 02-ML-1475 DT, et al., 2005 WL 1594403, *19 (C.D. Cal. June 10, 2005) (awarding class counsel's fee request of 33% of the common fund); In re Bankcorp. Litig., 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming award of 36% of the settlement fund); In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 460 (9th Cir. 2000) (affirming award of attorneys' fees equal to 33.33% of the total recovery); In re M.D.C. Holdings Sec. Litig., No. CV89–0090 E (M), 1990 WL 454747, *1, *10 (S.D. Cal. Aug.30, 1990) (awarding attorneys' fees equal to 30% of the settlement fund plus expenses); Greene v. Emersons Ltd., No. 76 Civ. 2178 (CSH), 1987 WL 11558, *8 (S.D.N.Y. May 20, 1987) (awarding attorneys' fees and expenses in excess of 46% of the settlement fund); In re Combustion, Inc., 968 F. Supp. 1116, 1131–32 (W.D. La. 1997) (awarding attorneys' fees equal to 36% of the common fund); In re Ampicillin Antitrust Litig., 526 F. Supp. 494, 503 (D.D.C. 1981) (awarding attorneys' fees in excess of 40% of the settlement fund); Beech Cinema, Inc. v. Twentieth Century Fox Film Corp., 480 F. Supp. 1195, 1198–99 (S.D.N.Y. 1979) (awarding attorneys' fees in excess of 50% of the settlement fund); Van Gemert v. Boeing Co., 516 F. Supp. 412, 420 (S.D.N.Y. 1981) (awarding attorneys' fees of 36% of settlement fund).

Judges in this District also have approved similar fee awards previously in TCPA cases. See Desai v. ADT Sec. Servs., Inc., No. 1:11-cv-01925 (N.D. Ill. June 21, 2013) (Bucklo, J.) (ECF No. 243) (fees equal to one-third of the settlement fund); Paldo Sign & Display Co. v. Topsail Sportswear, Inc., No. 08-cv-05959 (N.D. Ill. Dec. 21, 2011) (Kennelly, J.) (ECF No. 116) (fees equal

to one-third of the settlement fund plus expenses); *CE Design Ltd. v. CV's Crab House North, Inc.*, No. 07-cv-05456 (Oct. 27, 2011) (Kennelly, J.) (ECF No. 424) (fees equal to one-third of settlement plus expenses); *Saf-T-Gard Int'l, Inc. v. Seiko Corp. of Am.*, No. 09 C 0776 (N.D. Ill. Jan. 14, 2011) (Bucklo, J.) (ECF No. 100) (fees and expenses equal to 33% of the settlement fund); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07-cv-05953 (N.D. Ill. Nov. 1, 2010) (Kendall, J.) (ECF No. 146) (fees equal to one-third of settlement plus expenses); Hinman v. M&M Rentals, Inc., No. 06-1156 (N.D. Ill. Oct. 6, 2009) (Bucklo, J.) (ECF No. 225) (fees and expenses equal to 33% of the settlement fund).

### 2. The Requested Fee Reflects the Market Price for Legal Services

A review of the market price factors from *Sutton* demonstrates that counsel should receive a market-rate fee award of one-third of the common fund.

#### a. Risk of Nonpayment

First, prosecution of this action has involved significant financial risk for Class Counsel. Class Counsel undertook this matter solely on a contingent basis, with no guarantee of recovery. Exhibit 2, Burke Decl. ¶7. The risk of protracted litigation, and of ultimately obtaining no recovery at all, was especially high in this case, given that defendants lodged a vigorous defense. Plaintiff disputes both the factual and legal bases for defendants' positions but acknowledges that even if he prevailed, payment to the class would likely be delayed through additional appeals to the Seventh Circuit, and possibly the United States Supreme Court.

#### b. Quality of Performance

Second, the fee award reasonably reflects the "market price" given the quality of Class Counsel's performance. *See Sutton*, 504 F.3d at 693. By applying their skill and experience, Class Counsel was able to obtain an outstanding result for Class members in the face of a staunch defense. Every Class member who filled out the claim form will receive a cash payment of approximately $635. The fact that the class was certified, and that defendants were willing

to pay such an amount, reflects the dedication, skill, and experience of Class Counsel.

*c.  Amount of Work Invested*

Class Counsel have devoted numerous hours to investigating, litigating, and settling this case.   Exhibit 2, Burke Decl. at ¶7. Class Counsel propounded written discovery requests to defendants and filed a motion to compel. Class counsel then obtained an order compelling defendants to provide all class information in discovery. When defendants did not do this, Judge Denlow certified a litigation class, which resulted in an appeal to the Seventh Circuit pursuant to Fed.R.Civ.P. 23(f). This is the point when the parties began mediating.

Class Counsel also devoted numerous hours to negotiating the settlement, which included preparing their client's mediation submission, attending two separate mediation sessions, and several telephonic mediation sessions. *Id*. at ¶2. Finally, Class Counsel spent substantial time preparing the settlement papers and notice documents, working with the independent notice provider, and drafting the approval motions.  *Id.*   The amount of work supports the requested fee.

*d.  Stakes of the Case*

This case involves tens of thousands of Class members who allegedly received harassing, unlawful calls from defendants. *See* Exhibit 3, AB Data Decl. ¶ 6 (indicating that 216,498 notices were mailed to the Class).  The amount each class member is individually eligible to recover is low (between $500 and $1,500 per call) and thus individuals are unlikely to file individual lawsuits. Indeed, before they received notice of this lawsuit, many class members were likely unaware that they had claims at all. A class action is realistically the only way that many individuals would receive any relief.  In light of the number of Class members and the fact that they likely would not have received any relief without the assistance of Class Counsel, the requested fee is reasonable.

### 3.  No Class Members Have Objected to the Requested Fee

Class Counsel fully disclosed that they seek attorneys' fees of $1,666,666.33, in notices mailed to the Class, and published on the settlement website. *See* Dkt. No. 56, pp. 27; 29.  No

one has objected to this transparent fee request.  Exhibit 2, Burke Decl. ¶ 7; Exhibit 3, AB Data

Decl. ¶ 22; see also, absence of objections on court docket.

In sum, the requested attorneys' fees are fair, adequate, and reasonable in light of: (1) the substantial financial recovery for Class members (2) the diligent and efficient effort utilized by Class Counsel in litigating Plaintiff's claims; (3) Class Counsel's substantial experience in complex litigation and skill utilized to achieve the settlement; (4) the lack of opposition to the fee request; and (5) the hurdles to certifying the Class and proving liability and damages at trial.

## B.    The Incentive Award to the Class Representative Should Be Approved

Federal courts often exercise their discretion under Rule 23(d) and (e) to approve case contribution awards to the plaintiff who instituted and prosecuted the action on the theory that there would be no class wide benefit absent the plaintiff's suit. Service awards compensating named plaintiffs for work done on behalf of the Class attempt to account for financial or reputational risks associated with litigation, and promote the public policy of encouraging individual plaintiffs to undertake the responsibility of representative lawsuits. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *see also In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001) ("Incentive awards are justified when necessary to induce individuals to become named representatives."). Factors relevant to determining whether an incentive award is proper and the amount of such award "include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff has expended in pursuing the litigation." *Cook*, 142 F.3d at 1016.

The requested service award of $20,000 is reasonable under the circumstances.  Mr. Martin worked with Class Counsel to investigate the case, was kept abreast of the proceedings through litigation and settlement, attended both mediations in person, and was consulted on major litigation decisions and briefing.  Mr. Martin also reviewed and commented on the

Settlement Agreement. *See* Burke Decl. ¶ 2.

An award of $20,000 is well in line with awards approved by federal courts in Illinois and elsewhere. *See, e.g., Cook*, 142 F.3d at 1016 (affirming $25,000 incentive award to plaintiff); *Heekin v. Anthem, Inc.*, No. 1:05-01908, 2012 WL 5878032, *1 (S.D. Ind. Nov. 20, 2012) (approving $25,000 incentive award to lead class plaintiff over objection); *Will v. Gen. Dynamics Corp.*, Civil No. 06-698-GPM, 2010 WL 4818174, *4 (S.D. Ill. Nov. 22, 2010) (awarding $25,000 each to three named plaintiffs); *Spicer*, 844 F. Supp. at 1267–68 (collecting cases awarding incentive fees ranging from $5,000 to $100,000 and awarding $10,000 each to three named plaintiffs); *Desai v. ADT Sec. Servs., Inc.*, No. 1:11-cv-01925 (N.D. Ill. June 21, 2013) ($30,000 service award to each named plaintiff in TCPA class settlement), *cf. Holtzman v. Turza*, 728 F.3d 682, 690 (7th Cir. 2013) (suggesting that $7,500 class representative award was insufficient in TCPA class case that went to judgment). If approved, the incentive award will be deducted from the common fund.

## III. CONCLUSION

The settlement is fair, adequate and reasonable. The $4.9 million that defendants must pay to the Class is an outstanding result in light of the recoveries potentially available under the law and the risks of continued litigation. Furthermore, Class Counsel respectfully requests that the Court grant the motion and award Class Counsel $1,666,666.66, which amounts to one-third of the $4.9 million settlement fund. Class Counsel further requests that the Court approve an incentive award of $20,000, for Class Representative Nicholas Martin.

Plaintiff respectfully requests that the Court grant final approval to this fantastic class settlement.[3]

---

[3] There may be a delay in granting final approval because Class Action Fairness Act "CAFA" 28 U.S.C. § 1715, notice was not sent until October 11, 2013. Plaintiff does not want the settlement to be delayed because of this issue. However, to the extent that the Court believes a delay is appropriate, plaintiff requests that the Court enter an order approving all aspects of this settlement, except as to possible attorney general objections. See 28 U.S.C. § 1715(d). The parties do not expect any objections by attorneys general.

Respectfully submitted,

/s/Alexander H. Burke

**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com